## BOSCAWEN *v.* CANTERBURY.

Where the town of B. petitioned the court to perambulate and establish the line between that town and the town of C., under sec. 6, chap. 37, of the Revised Statutes, and it appeared that one of the objects was to procure a report to be used in defeating the building of a bridge between the two towns, — *held*, that the original petitioners, who had caused the road to be laid out, by which the bridge was to be built, might be permitted to appear and oppose the acceptance of the report, on filing security to pay all such costs as should be caused by their interference.

Where the statute provided that the petition to perambulate and establish a line between towns should be presented by the town first incorporated, and the town of C. was incorporated in 1727, and the town of B. in 1760, but it appeared that a gore of land, adjoining that portion of the town of B., where the dispute arose, was incorporated into the town of C. in 1765 — *held*, that a petition was properly presented by the town of B.

On a petition, by a town, to perambulate and establish a line between that and the adjoining town, no one is entitled to notice of the pendency of the petition, and of the hearing before the committee appointed thereon, except the opposing town.

Where a committee was appointed, to perambulate and establish the line between two towns, which were situated on opposite sides of a river, and were both bounded by the river, — *held*, that the line between them was the centre of the river, measuring from bank to bank, and not a line dividing the water running in the stream in equal quantities

PETITION, by the selectmen of Boscawen, praying the court to perambulate and establish the lines between said town and the town of Canterbury. A committee was duly appointed, upon the petition, who made report of their doings as follows : " The undersigned committee, in obedience to the annexed order of court, report, that they have attended to the duty assigned them, and by the agreement of the selectmen and agents of the towns, met both parties at Heath's inn in Boscawen, examined the charters of both of the towns, and heard such suggestions and statements as the parties and their counsel chose to make, and have come to the conclusion, that by the charter of Boscawen, its eastern boundary is the Merrimack river, and that by the charter of Canterbury, with its addition, its western boundary is the Merrimack river.

" These charters, having established that river as the dividing boundary between the towns, the law decides the centre of the stream to be the precise line of partition. The committee decide that centre line to be the centre of the river, at low water mark. This principle they apply to the whole length of the line between Boscawen and Canterbury. The particular locality of this line the committee caused to be established, by admeasurement, at such points as either party desired. The process was to find, from the measure of the depth and the distance upon the surface, the centre of the body of the stream flowing between the low water lines."

The remaining part of the report described the monuments, fixed by the committee upon the principles above stated, and is not necessary to be further reported.

Prior to the presentation of the petition, a road had been laid across Merrimack river, from Boscawen to Canterbury, in the year 1848. On the twenty-first of February, 1851, informations were filed against both of the towns, for not making the

road, and it appeared that the towns intended to use the report of the committee, if the court should permit, as evidence on the trial of the informations, with a view of defeating the building of a bridge across the river where the road was laid out.

The original petitioners for the road came into court and asked leave to appear, and upon giving property security for the payment of all costs caused by their interference, to oppose the acceptance of the report. Should they be permitted to oppose its acceptance, they urge the following reasons why the same should not be accepted.

1. The proceedings of the committee are null and void, because the selectmen of the first incorporated town, must first commence proceedings in order to give the court jurisdiction of the subject matter. In this case the petition is signed by the selectmen of Boscawen, and the proceedings have been had under that petition. Canterbury was incorporated in 1727, and Boscawen in 1760.

2. The committee erred, in this respect, that they undertook to make and establish a new line rather than to examine or perambulate the old line, or to renew the marks and bounds thereof. The old line between the towns, acquiesced in for one hundred years, was the centre thread of Merrimack river, regard being had to the surface measure of its waters between bank and bank, rather than the comparative volume of water on either side of the said centre.

3. The proceedings and report were instituted and procured, for the purpose of making material testimony to defeat process against the towns of Canterbury and Boscawen, for not building the highway as laid out in 1848. The petitioners for the highway, being interested in said highway and process, were entitled to notice and a hearing before said committee. They had no notice or hearing, and are thus to be indirectly deprived of their legal rights.

It was proved to the court that the town of Canterbury was incorporated in the year 1727, and the town of Boscawen in 1760. But that part of the town of Canterbury, which adjoins the line mentioned in said report, consisting of a gore of land

adjoining Merrimack river, was made and constituted a part of said town by an act of the legislature, passed June 12, 1765.

*J. Bell,* for Boscawen.

*Fowler,* for Canterbury.

*Pierce & Minot,* for the original petitioners.

EASTMAN, J. We infer, from the facts stated in this case, that the petition to perambulate and establish the lines was an amicable proceeding between these towns; and that one of the principal objects of the proceeding was to have the line established, upon the supposition that it might be of material service, in relieving the towns from the expense of building the bridge required by the report of the road commissioners in 1848. If we are correct in this, and we see no reason to doubt it, the original petitioners for the road had a direct interest in defeating the acceptance of any report, establishing the line between the towns, which might have the effect to prevent the building of the bridge; and upon giving proper security, for the payment of all such costs as should be caused by their interference, we think they should have leave to appear, and be heard on the question of the acceptance of the report. Entertaining these views we will proceed to examine the objections filed.

These proceedings were founded upon that section of the statute, which provides that, when the selectmen of adjoining towns shall disagree in renewing and establishing the lines and bounds of such towns, the court of common pleas, for the county in which the town first incorporated, or paying the highest tax. as aforesaid, is situate, upon petition and after notice to the other town interested, shall, by themselves, or a committee for that purpose, examine said disputed lines, and their decision. thereon shall be final, and the court may order either or both towns to pay the costs, as they may think just. Rev. Stat., chap. 37, § 6.

The first objection is, that these proceedings are null and

void, because the selectmen of the first incorporated town must first commence proceedings, in order to give the court jurisdiction of the subject matter. It appears that Canterbury was incorporated in 1727, and Boscawen in 1760, and that the petition was made by Boscawen. Were there, then, no other facts before us, the objection would be well founded, for Canterbury would appear to be the first incorporated town. But the case finds that that part of Canterbury which is next to the line mentioned in the report, consisting of a gore of land adjoining the Merrimack river, was constituted a part of that town in 1765. Consequently, Canterbury, with its present limits, was established in 1765, and that portion of it which raises the dispute, had no incorporation till that time.

We think the proceedings were well enough instituted by Boscawen and that this objection must be overruled.

The third objection also cannot be sustained. The statement makes no provision for a notice to any party, on the presentation of the petition or afterwards, except to the other town interested. Although the original petitioners for the road might be interested, to the extent that no report should be made that would tend to defeat the building of the bridge, yet this fact could not be legally known to the committee. They were to be governed by their commission and the statute of the State, and were not authorized to make any individuals parties to the proceedings who were not specified, either in the one or the other. The claim, then, by the original petitioners, that they were entitled to notice from the committee, and a hearing before them, is not well founded.

But we find ourselves constrained to hold, upon a decision made in our own court, that the second objection is well taken; notwithstanding the many authorities that sustain the legal position taken in the report, and the high respect we entertain for the profound legal acquirements of the very able committee who made it. The decision to which we refer, was made upon the petition of Green and others for a highway in Plymouth and Holderness, Grafton county, 1843, on which the bridge over the Pemigewasset, at Plymouth, was laid out. It is understood

that it was held, in that case, that the line between the towns was the centre of the river, measuring from bank to bank, and not a line dividing the water running in the stream into equal quantities.   And we are not aware that there was anything in the facts of that case, that could change the principle as applicable to this.   According to the doctrine of that decision, the line established by the committee, as set forth in the report in this case, was not the true one between the towns, and the report must consequently be rejected.

*Report rejected.*