INHABITANTS OF WARREN, petitioners,

*vs.*

INHABITANTS OF THOMASTON.

Knox.　Opinion July 5, 1883.

*Boundary lines. Channel. Special stat. 1864, c. 307.*

When the channel of a river is named as the boundary between two towns, the line is the thread of the channel.

By special stat. 1864, c. 307, the thread of the channel of Georges river forms a part of the boundary line between the towns of Warren and Thomaston.

ON REPORT.

This was a petition dated March 24, 1882, for the appointment of commissioners to determine the true line between the towns, the same being in controversy, under the provisions of R. S., c. 3, § 43. The commissioners reported that, "Being of the opinion that the line cannot be ascertained and determined until the question of law is settled," submitted it to the court for instruction ; thereupon a report to the law court was agreed upon.

*C. E. Littlefield*, for the petitioners, cited : *Winslow* v. *Kimball*, 25 Maine, 493 ; *Ingalls* v. *Cole*, 47 Maine, 253 ; *Collins Granite Co.* v. *Devereaux*, 72 Maine, 424 ; *Holden* v, *Veazie*, 73 Maine, 315 ; *Perkins* v. *Oxford*, 66 Maine, 545 ; *Oxton* v. *Groves*, 68 Maine, 372 ; *Low* v. *Tibbetts*, 72 Maine, 94 ; *Cottle* v. *Young*, 59 Maine, 105 ; *Johnson* v. *Anderson*,

18 Maine, 77; *Pike* v. *Munroe*, 36 Maine, 312; *Robinson* v. *White*, 42 Maine, 217; *Newhall* v. *Ireson*, 8 Cush. 595; *Kingston* v. *Louw*, 12 Johns. 252; *Thomas* v. *Hatch*, 3 Sum. 170; *McCready* v. *Virginia*, 94 U. S. 391; *Browne* v. *Kennedy*, 9 Am. Dec. 503.

*A. P. Gould*, for the respondents.

The same rules of construction in the matter of boundaries apply in acts of incorporation of towns which prevail in the construction of deeds and grants. *Perkins* v. *Oxford*, 66 Maine, 545. " To," " from " and " by " are terms of exclusion in the construction of deeds in determining the boundaries of the land granted. *Bradley* v. *Rice*, 13 Maine, 198; *Robinson* v. *White*, 42 Maine, 209; see also 2 Wash. Real Prop. 679, 680.

In *Pike* v. *Monroe*, 36 Maine, 309, it is held, that a deed beginning at a certain monument and " running from thence down the river fifty rods, bounds the lot conveyed, on the river; and if the river is a fresh water stream, it conveys the land to the centre." " But if it is a navigable river, in which the tide ebbs and flows," it extends to low water mark, citing: *Hartsfield* v. *Westbrook*, 1 Haywood, (N. C. ) 258; *Rogers* v. *Mabe*, 4 Dev. N. C. 180; *Buckley* v. *Blackwell*, 10 Ohio, 508; *Harramond* v. *Glaughon*, Taylor's R. 136; *Kingston* v. *Louw*, 12 Johns. 252. As applied to tide water streams these cases exclude the stream. See also *Handly's Lessee* v. *Anthony*, 5 Wheaton, 375.

By the above rules of construction the Thomaston line clearly stops when it gets to the channel of George's River and does not go to the centre. And it runs thence by the channel, which is by the eastern edge of it. No part of the channel is in Thomaston. Before the act of 1864, the whole of the river was in Warren. That act set off a portion of Warren to Thomaston, if it had any effect. No part of the river below low water mark has ever been set off from Warren.

The change of words in describing the new line in the act of 1864, aids in the construction of it.

" Beginning in the *center* of the channel of Oyster river. . . following down said river *in* the channel *to* the channel of Georges

river, thence down said channel," &c. Why this change of language when the line reached Georges river, if it was intended to establish the boundary in the center of the channel, as it had done in Oyster river? The change is too significant to be disregarded.

APPLETON, C. J. By c. 307, § 1, of the acts of 1864, entitled, " An act to change the town line between Thomaston and Warren," it is provided that "the town line between the towns of Thomaston and Warren shall be established as follows: Beginning in the centre of the channel of Oyster river, below Elder point, near the head of tide water, where the town lines now cross said river, and following down said river in the channel to the channel of Georges river; thence down said channel, till it intersects the town line where it crosses said Georges river."

The question to be determined, is the meaning of the words, " to the channel of Georges river; thence down said channel, till it intersects the town lines, where it crosses said Georges river." Is the boundary line between these towns the thread of the channel — its central line, or is it the exterior line of the channel where the Oyster river first comes in contact with it?

When the line runs " to the road thence by the road," the grant is to the centre of the road, even though the measurement of distances would extend only to the side of the road. *Oxton* v. *Groves*, 68 Maine, 371. A grant of land bounded on a highway, carries the fee in the highway to the centre, unless the terms of the conveyance unequivocally exclude such construction. *Low* v. *Tibbetts*, 72 Maine, 92. Nothing short of an express intention to exclude the soil of the highway will have such effect. *Salter* v. *Jonas*, 10 Vroom, 469 ; *Paul* v. *Carver*, 26 Penn. 223.

In case of fresh water streams, when such stream is the boundary, the deed passes the fee to its centre. The words to the stream, thence up or down the river, in a deed pass a title to the thread of the stream. *Rice* v. *Monroe*, 36 Maine, 309. The general rule is, that when the river is the boundary, the grantee takes *usque ad filum aquœ*, unless the river be expressly excluded from the grant by the terms of the deed. *Luce* v. *Carley*, 24 Wend. 451.

Indeed the authorities are uniformly to the effect that when a grant runs to a highway or river, and thence up or down the same, the title passes to the centre of each. *State* v. *Canterbury*, 28 N. H. 195; *Rix* v. *Johnson*, 5 N. H. 520.

The line, in the case under consideration, runs not by Georges river, but to and then down its channel. The channel is the deepest part of the river. It is the navigable part — the water road over which vessels pass and repass. It is the highway of commerce. Had the line run to the river and down the river, the boundary would have been the thread of the stream — the *filum aquae*. But, the thread of a stream is the middle line between the shores, irrespective of the depth of the channel, taking it in the natural and ordinary stage of the water. The channel and the thread of the river are entirely different. The channel may be one side of the thread of the river or the other. The legislature exclude the idea of the thread of the river as the boundary and establish a totally different one — the channel of the river. A draw bridge is required by the necessities of navigation. Hence, not the river, but the channel is made the boundary, so that the burden resting upon these towns may thus be equalized.

The line as established does not run to a stake. It does not run to the river. It runs to the channel of the river — not "to the margin" of the channel — not "by the side of" the channel — not "by the line of" the channel, (these expressions, "by the margin," "by the side of," "by the line of," have been held in cases of a highway to pass title to the exterior line of the way, and not to its centre), but to the channel as a unit, as a totality. It runs to the highway of vessels. The channel, as a whole, is the dividing line, and each town is bounded by the centre line thereof. When a line runs "to a road and thence by the road," "the road," observes SHAW, C. J., in *Newhall* v. *Ireson*, 8 Cush. 595, "is a monument; the thread of the road, in legal contemplation, is that monument or abuttal. Land may, no doubt, be bounded *by the side* of a highway, but it must be done in clear and distinct terms to control the ordinary presumption." Whether the highway be by land or water, the same rule of construction must

apply. When the river is a boundary, the thread of the stream is the dividing line. When the channel, as here, is the boundary, the thread of the channel is constituted the boundary. The *Cold Spring Iron Works* v. *Tolland,* 4 Cush. 492.

The purpose of the legislature was to change the old and establish a new line between these towns. The Georges river is not made the boundary, because, if so, the thread of the stream would be the dividing line between them, and the thread might have the channel on one side or the other, and thus impose unequal burdens on the towns. Hence, after commencing in the centre of the channel of Oyster river, then following said river in the channel *to* the channel of Georges river, the line runs down said channel, till it intersects the town line, when it crosses said Georges river. It does not run to the bank — to monuments on the bank — to the side of the channel as a monument. The channel being a monument, the divisional line is the centre, precisely as if it had been a river *Boscawen* v. *Canterbury,* 25 N. H. 188; *Plymouth* v. *Holderness,* 28 N. H. 217. Whether the tide ebbs and flows is a matter having no bearing on the question, the legislature having uncontroled power over the boundaries of towns.

The result is, that the thread of the channel of Georges river is the dividing line between Warren and Thomaston.

BARROWS, DANFORTH and LIBBEY, JJ., concurred.

SYMONDS, J., concurred in the result.

VIRGIN, J., did not concur.