[Sac. No. 1106. In Bank.—January 29, 1904.]

## COUNTY OF MARIPOSA, Appellant, v. COUNTY OF MADERA, Respondent.

County Boundary—Statutes Controlling Political Code.—The act of April 1, 1872, as amended by the act of February 11, 1874, defining the boundary-line between Mariposa and Fresno counties, which line was adopted by the act of March 11, 1893, creating Madera County out of the northern portion of Fresno County, are determinative of the boundary between Mariposa County and Madera County, and control the provisions of section 3938 of the Political Code.

Id.—Liberal Construction of Statutes—Mistake in Description—Intention of Legislature.—The court will not declare a statute

[1] 56 Am. Dec. 329.

defining a county boundary void and ineffective for uncertainty because of a mistake in description in one definition of the boundary, but will liberally construe the statute in support of the evident intention of the legislature.

APPEAL from a judgment of the Superior Court of Merced County.   E. N. Rector, Judge.

The facts are stated in the opinion of the court.

J. J. Trabucco, District Attorney of Mariposa County, and J. A. Adair, Successor, and Congdon & Congdon, for Appellant.

The act of April 1, 1872, is void and ineffective for hopeless uncertainty and mathematical impossibility.   (*Blanchard* v. *Sprague,* 3 Sum. 279; *Campbell's Case,* 2 Bland, 209-231; *State* v. *Ashbrook,* 154 Mo. 375;[1] *State* v. *Partlcw,* 91 N. C. 550;[2] *State* v. *West Side St. Ry. Co.,* 146 Mo. 155; *Collins* v. *Karatofsky,* 36 Ark. 331; *Steere* v. *Brownell,* 124 Ill. 29; *Traver* v. *Merrick Co.,* 14 Neb. 327;[3] *Hutchings* v. *Commercial Bank of Davisville,* 91 Va. 68; *United States* v. *Choctaw Nation,* 179 U. S. 494.)

R. R. Fowler, District Attorney of Madera County, and F. H. Short, for Respondent.

The act of April 1, 1872, was not repealed by the code, and is not void for uncertainty, but must be construed in accordance with the intention of the legislature.   (*Serrano* v. *Rawson,* 47 Cal. 52; *In re North Beach etc. Ry. Co.,* 32 Cal. 499; *Smith* v. *Randall,* 6 Cal. 47;[4] *Pittsburg etc. Ry. Co.* v. *Backus,* 133 Ind. 638; *Baker* v. *Payne,* 22 Or. 344.)   The amendatory act removed all uncertainty in the act of 1872.   (*Donlon* v. *Jewett,* 88 Cal. 530.)

BEATTY, C. J.—This is a suit in equity to determine a disputed boundary.   It is alleged in the complaint that plaintiff and defendant are counties of California created by law, that the territory of Madera is contiguous to and next south of Mariposa, that the true dividing-line is that defined in

---

[1] 77 Am. St. Rep. 765.   [3] 45 Am. Rep. 111.
[2] 49 Am. Rep. 652.   [4] 65 Am. Dec. 475.

section 3938 of the Political Code, and that Madera has been encroaching upon the rights of Mariposa, by claiming and attempting to exercise jurisdiction over a strip of territory north of the boundary thirty miles long and of an average width of six miles. Upon these and other pertinent allegations a decree is prayed establishing the boundary as described in the complaint, and enjoining Madera County from claiming or exercising jurisdiction to the north of it. To this complaint the defendant demurred upon the ground, among others, that it failed to state a cause of action, and upon this ground the demurrer was sustained. From the judgment entered thereon plaintiff appeals. The only question argued by counsel, and the only question to be considered, is the proper construction of certain special statutes and certain sections of the Political Code relating to the disputed boundary. We have, in other words, merely to determine the intention of the legislature according to the established rules of statutory construction. This, however, is a task of some difficulty, owing to the confused and imperfect descriptions contained in some of the acts by which the legislature has attempted to express its meaning, with reference to which it may be remarked—paraphrasing the language of Judge Story in *Blanchard* v. *Sprague,* 3 Sum. 285—that while as private citizens we may have no doubt of what the legislature really intended, we yet must feel considerable doubt whether that intention can be extracted from the terms of its enactments by any judicial process of interpretation.

Before entering upon a discussion of the particular statutory provisions in question here, it may be of advantage to describe briefly the subject of the legislation: Mariposa was one of the counties created by the act of February 18, 1850, subdividing the state into counties. (Stats. 1850, p. 58.) It was of very great extent—including the territory bounded by the coast range on the west, the boundary of the state on the east, the ridge between the Tuolumne and Merced rivers on the north, and the counties of Los Angeles and San Diego on the south. Since that time a number of new counties have been carved out of the territory originally included in Mariposa—Tulare, Kern, Merced, and Fresno, on the south and west, and Mono and Inyo, on the eastern slope of the Sierras, with their western boundary following the summit line of

that range.  The county of Fresno was formed in 1856 out of territory taken from Mariposa and Merced on the north and from Tulare on the south, and the act, of course, defined the dividing-line between Fresno and Mariposa.  This was done by a description perfectly definite and consistent in every respect, but by subsequent enactments other descriptions were substituted which have given rise to the present controversy between Mariposa and Madera.  For in creating the county of Madera in 1893 (Stats. 1893, p. 168) out of territory constituting the northern portion of Fresno County, the line of delimitation between that and Mariposa County was not otherwise described than as "the line now established between the counties of Mariposa and Fresno."  So that the question to be here determined is, What line had been legally established as the common boundary of Mariposa and Fresno at the date of the creation of Madera County on March 11, 1893?

By the act of April 19, 1856, creating the county of Fresno, its northern, or rather its northwestern, boundary—constituting the dividing-line between it and Mariposa County— was a mathematical line extending from the point where the Stockton and Millertown road crosses the Chowchilla north forty-five degrees east to the eastern boundary of the state. By an act to better define the boundary-line between Fresno and Mariposa counties, approved March 29, 1870, (Stats. 1869-1870, p. 449,) the following change was made: The line of 1856 was retained from the Chowchilla crossing to the southwest corner of section eleven, township six south, range twenty east, M. D. M., from which point it was required to run east on section lines to the main ridge dividing the waters of the Merced and San Joaquin rivers, and thence following said ridge to the eastern boundary of Fresno County, which at that time was the summit line of the Sierras—the territory east of the summit having been detached for the creation of the county of Mono.  This brought the eastern, or northeastern, end of the line of division to the summit of Mount Lyell, one of the loftiest peaks of the Sierras, from which not only the ridge dividing the San Joaquin and Merced projects, but also the ridge dividing the Merced and the Tuolumne; and since the latter ridge forms the dividing-line between Mariposa and Tuolumne counties, the summit of Mount Lyell became thenceforth the common corner of the three counties,

Tuolumne, Mariposa, and Fresno, and was so designated in several acts of the legislature relating to these boundaries. At the next session of the legislature our Political Code was adopted (March 12, 1872), containing, among other things, careful descriptions of the various county boundaries. By sections 3938 and 3939 the common boundary of Mariposa and Fresno counties was defined in substantially the same terms as in the act of March 29, 1870,—and in both sections Mount Lyell was referred to as the common corner of Tuolumne, Mariposa, and Fresno. These provisions of the code, therefore, left the line where it had been placed by the act of 1870. But at the same session of the legislature, on April 1, 1872, a special act was passed "to better define the boundary-line of Mariposa and Fresno counties" (Stats. 1871-1872, p. 891), the first section of which reads as follows:—

"The line at present known as the boundary-line between Mariposa and Fresno counties, from the westerly junction of said counties running easterly to the southwest corner of section eleven, and the northwest corner of section fourteen, in township six south, range twenty east, of Mount Diablo meridian; thence east to the northwest corner of section fourteen, in township six south, range twenty-one east, thence north to the northwest corner of section thirty-five, in township five south, range twenty-one east; thence east to the southwest corner of section thirty, in township five south, range twenty-two east; thence north to the southwest corner of the Mariposa Big Tree Grant; thence east along the line of said grant to the southeast corner of said grant; thence north along the line of said grant to the northeast corner of the same; thence north to the original boundary-line between the counties of Mariposa and Fresno; thence along said line to the present boundary-line, is hereby declared and constituted the boundary-line between said counties."

The second section provides for a survey of the line by the official surveyors of the two counties. The third section repealed the act of March 29, 1870. The fourth section put the act in force immediately. It is the territory lying between the code line (Pol. Code, secs. 3938, 3939) and the line described, or attempted to be described, in this special act and an amendment thereto, that is in dispute between the two counties—Mariposa contending that the code provisions are

in force, and Madera that they were superseded, even before they went into effect by the special act of April 1, 1872,—or, at any rate, that they have been superseded by the amendment to that act approved February 11, 1874, (Stats. 1873-1874, p. 100,) by which the words "of Tuolumne County" were inserted in the first section of the act of 1872 (above quoted) after the words "thence along said line to the present boundary-line."

Upon the case thus presented the argument of appellant is directed to two main propositions:—

*First*—That the act of 1872 would not have superseded the code provisions, even if it had been a valid law; but

*Second*—That standing alone it could never have had any force or effect, being absolutely void for uncertainty in the description of the line it professed to establish, for which reason also, appellant contends, it was incapable of amendment, and derived no force or validity from the correction attempted to be made by the act of 1874.

The first of these propositions is easily disposed of. The Political Code was approved March 12, 1872, but by its own terms (sec. 2) was not to take effect until January 1, 1873. Several acts were, however, subsequently passed at the same session putting particular portions of the codes in operation at earlier dates, among others the act of March 22, 1872, (Stats. 1871-1872, p. 481,) by which the whole of title one of part four—embracing sections 3938, 3939—was given force and effect from and after May 1, 1872. Thus it will be seen that the act of April 1st was approved after the Political Code, though it took effect before the code; and, assuming its validity, there can be no question that its provisions prevail over conflicting code provisions, not only because it is a subsequent enactment, but because under the rule of construction prescribed by the code itself (secs. 4478, 4479) it would have had the same effect if it had been passed and approved on the first day of that session. And the provisions of the code were not saved from the operation of any act passed at that session, as an express repeal or repeal by implication, by the fact that they were not in force at the date of the passage of such act. (*Goodwin* v. *Buckley,* 54 Cal. 295; *Smith* v. *McDermott,* 93 Cal. 421.) Appellant, however, contends that this case does not fall under the rule of *Good-*

*win* v. *Buckley,* but rather under the rule of *Hemstreet* v. *Wassum,* 49 Cal. 273, where it was held that an amendment to an old statute passed at the same session at which the code was adopted, perished with the statute which it amended as soon as the code went into effect—the statute itself being repealed by the code (sec. 18). But the distinction between that and the present case is very clear. The act of April 1, 1872, was not an amendment to another statute into which it was incorporated, but was an independent statute, complete in itself, and could not be repealed by an earlier statute. This distinction is pointed out in *People* v. *Salvador,* 71 Cal. 16.

There being no question that the act of April 1, 1872, prevails over the code provisions, if valid and operative in itself or by virtue of the amendment of February 11, 1874, it remains only to consider the objections to those acts.

There is no room for a difference of opinion as to the meaning of the words "present boundary-line" in the latter part of the first section of this act, as above quoted. It is elliptical, but by a perfectly allowable usage it stands for the full expression "present boundary-line *between the counties of Mariposa and Fresno,*" and this because it follows almost immediately after the words: "*original* boundary-line between the counties of 'Mariposa and Fresno.'" Understood in this way, the section presents in itself no difficulty as to its construction. The original boundary-line was the line defined in the act of 1856 creating Fresno County, and the present boundary-line was the line defined by the act of 1870, by which the original boundary east and north of the southwest corner of section eleven, township six south, range twenty east, M. D. M., was deflected from the mathematical line extending from the Chowchilla crossing north forty-five degrees east to the eastern boundary of the state, so as to run east on section lines to the summit of the ridge between the Merced and Tuolumne rivers, and thence along said ridge to the summit of the Sierras, at the peak of Mount Lyell. It is evident that the framers of the act supposed that the "original" line would intersect the "present" line before reaching the summit of the Sierras, and that they intended to retain the "present line" from such point of intersection to Mount Lyell. It appears, however, from a map accompany-

ing the record, and which is admitted by counsel to be correct, that in this matter the legislature was mistaken. The peak of Mount Lyell, instead of standing to the north of the "original" line, is about three miles to the southeast of it, so that the "original line," to whatever distance projected, never could intersect the "present line." It is for this reason alone, because one definition of the boundary—although not faulty in terms—does in point of fact involve a mathematical impossibility, that counsel contends that the act is totally void, in legal contemplation non-existent and incapable of amendment.

It is greatly to be feared that a rule of construction so strict as that insisted upon by appellant would, if generally enforced, have the effect of invalidating many acts of our legislature which have long been the sole support of important public and private interests. If a strict scrutiny were made of the various acts creating counties and defining their boundaries, especially the earlier ones, there is little doubt that many errors and absurdities would be discovered. As an instance, it may be mentioned that the original boundary-line of Fresno County cut off from Tuolumne County that portion of its territory between said line and the summit of Mount Lyell and transferred it to Fresno County, but when this line was altered by the act of 1870 that part of Tuolumne County, though cut off from Fresno, was not restored to Tuolumne by any express provision of the statute, and, therefore, upon a strict construction, has ever since remained derelict—a no man's land. But the rule contended for by counsel is not supported by the authorities he cites. They go no further than to show that an act is sometimes found to be so incomplete, equivocal, or indefinite, as to be incapable of enforcement without amendment, but they are not placed upon a par with acts that have been expressly repealed, and which, being out of existence, cannot be revived by acts professing to amend them. They are inoperative, and, in that sense only, void, but if by amendment they can be made certain, definite, unambiguous, there is no reason why they may not be made operative by that means as well as by the passage of a new act. If, therefore, the act of 1872 had been inoperative owing to the mistake above indicated, it ·would have been cured by the act of 1874. But in truth it would

have required no greater liberality of construction than is frequently indulged in support of the evident intention of the legislature to support the act of 1872. It is clear that the legislature intended by that act to restore the original boundary-line between Fresno and Mariposa, as far as it could be followed without intersecting the (then) "present" line. It happened, contrary to the belief of the legislature, that the original line could be followed all the way to the line of Tuolumne—the common eastern boundary of both Mariposa and Fresno—without intersecting the then present line of division between them, but this fact did not deprive it of the essential quality of a fixed, certain, and definite boundary—the sole purpose of the act.

The contention of counsel for appellant that the act of 1872 never took effect, either as originally enacted or as amended in 1874, is supposed to be strongly corroborated by the circumstance that in the act of 1893, creating Madera County, its eastern boundary is traced from the southeast corner only to the "corner common to the counties of Tuolumne, Mariposa, and Fresno" (i. e. to the summit of Mount Lyell), "thence following the line now established between the counties of Mariposa and Fresno, to," etc. This certainly proves that the legislature of 1893 had relapsed into the same mistake made by the legislature of 1872,—viz., that the original boundary between Mariposa and Fresno would pass to the south instead of to the north of Mount Lyell, but it proves nothing more, and, clearly, is not a construction of existing laws which the courts are bound to follow.

The judgment of the superior court is affirmed.

McFarland, J., Shaw, J., Angellotti, J., Lorigan, J., Van Dyke, J., and Henshaw, J., concurred.