[Civ. No. 2452.   Second Appellate District, Division One.—December 16, 1919.]

SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY (a Corporation), Plaintiff, v. SIMONS BRICK COMPANY (a Corporation), Appellant; CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

[1] BOUNDARIES—NON-NAVIGABLE STREAM—WHAT CONSTITUTES BANK. Where a non-navigable stream carries a large volume of storm water during rainy seasons which spreads over a wide area of sandy wash, its "banks" must be located approximately at the edges of the stream *as it flows during the time of normal water*, and not considered as the lines bounding the extreme limits of the storm flow.

[2] ID.—DESCRIPTION OF PROPERTY BY METES AND BOUNDS—RELATION TO RIVER BANK.—Where a piece of property is described as lying

———

2.   Waters and watercourses as boundaries, notes, 30 Am. Dec. 286; 27 Am. St. Rep. 56.

Effect of bounding grant on river or tide water, note, 42 L. R. A. 502.

and being on the east side of a certain river, the exact points and lines being described by metes and bounds, the point of commencement being referred to as "near said river," but the westerly boundary of said property is located easterly from the easterly bank of said stream as it flows during the time of normal water, it cannot be said that the westerly boundary of said property is even substantially coincident with the bank of said stream.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kenton A. Miller and Fred W. Smith for Appellant.

Charles S. Burnell, City Attorney, and J. H. O'Connor, Deputy City Attorney, for Respondent.

JAMES, J.—This action was brought by the plaintiff corporation to condemn certain lands for railroad purposes. As between the defendants Simons Brick Company and the city of Los Angeles there was a dispute as to the ownership of a certain parcel of land, which controversy the trial judge determined in favor of the municipality. On this appeal from the judgment, taken by the Simons Brick Company, the determination of that issue only as between the defendants named is sought to be reviewed.

That the city of Los Angeles was the original owner of the property is conceded. In the year 1876 the city made conveyance to one Hollenbeck of certain property; the conveyance being expressed in a grant deed describing the parcel conveyed. The Simons Brick Company received title to the same land by conveyance from the successor in title of the said Hollenbeck. The parcel of land in dispute lies within what may be generally termed the bed of the Los Angeles River, but outside of the lines apparently established by the deed of the city to Hollenbeck; it lies between the westerly boundary of said land, as so apparently described by the deed, and the center of the river-bed, or the place where the water (when there is any) ordinarily runs. Appellant's contention is that by the deed of the city to Hollenbeck the westerly line of the property as described in said deed was intended to refer to the bank of the river, and such being the case, the grantee took to the

center or thread of the non-navigable stream by reason of the provisions of section 830 of the Civil Code and section 2077 of the Code of Civil Procedure. The whole controversy is to be determined with reference to whether, by the description in the deed referred to, the western boundary of appellant's property was described as being substantially along the eastern bank of the Los Angeles River. The particular terms of description as embodied in the deed are as follows:

"Lying and being situate on the east side of the Los Angeles River and bounded east by lot 6, block 58, Hancock's Survey, Los Angeles city, commencing at a point near said river in the southwest corner of said lot; thence south 62 deg. east along the northerly line of Hollenbeck avenue 363 feet; thence north 28 deg. east 331.32 feet; thence west 508 feet; thence south 14½ deg. east 126 feet to the place of beginning, containing 2.09 acres."

Preliminarily it may be stated that it appears from the testimony that surveyors have had no difficulty in locating the exact points and lines described in the deed, upon the ground. In fact, the corner stakes of the western boundary were testified to as having been located by a surveyor introduced by the appellant. This westerly line ran a straight course. The Los Angeles River, at the time of the making of the deed of the city to Hollenbeck, during times of high water spread itself over a wash which was perhaps a quarter of a mile in width. At its easterly side was a bluff of considerable height, along which ran a zanja, used for the purpose of taking out irrigating water. Traces of the zanja still remain, showing that during all of the time succeeding the year mentioned the bluff has not been worn away to any considerable extent by the action of the water. The westerly line of appellant's property, following the literal description of the deed, lies below the base of this bluff and in the sandy wash which was at the time of the making of the Hollenbeck deed overflowed by the storm water which was carried in it during the winter months. In the early days little effort was made to confine the water to a fixed bed, although subsequent to the making of the Hollenbeck deed the city by map described what it called the "official bed" of the Los Angeles River. Along the easterly line of this "official bed" was built a levee and upon this levee

the railroad company which is plaintiff here maintained tracks. Subsequent to the building of this levee it would appear that, even in winter-time, the storm water did not find its way to any extent easterly of the levee nor upon the property of appellant. Moreover, the "center" of the stream, or the place where the water of the river flowed be tween the rainy seasons, has been at all times at and since the making of the Hollenbeck deed at about the center of what has been termed the official bed of the river as described by the city map. According to the testimony of a surveyor introduced by appellant, the westerly line heretofore referred to of appellant's property was about "430 feet from the easterly side of the official bed of the Los Angeles River." This witness further testified: "Taking the deed in evidence from the city to Hollenbeck conveying that tract I placed the westerly boundary about three hundred odd feet from the bed of the Los Angeles River as it exists at present. . . . It has always been in the same place ever since I can remember, which is about thirty-three or thirty-four years, so that the bed of the river during that time has been about where it is to-day, namely, about three hundred feet approximately west of the brown line on the map." William H. Workman, a pioneer resident of the city, testified as follows: "In 1876, the banks of the river with reference to the foot of the bank at the Simons Brick Company's plant ran practically where they are now, but the banks were only eighteen inches or two feet high. The river used to overflow the whole country there. . . . When the water was up, the eastern boundary of the river was very near the bluff. In 1862 and 1867 the water ran over to the bluff. There was a ditch called Zanja No. 7, running at the foot of the bluff on the Simons' property, at least along the side of the hill, possibly four or six feet higher than the river-bed, and in 1862 and 1867 the river washed that out." This witness further testified that until the building of the levee upon which the railroad tracks are situated, the stream shifted, and he said: "It shifted some. Still the river-bed was practically where it is now. Q. That is practically what is now the official river-bed? A. Yes, sir, practically." Another witness called on behalf of the appellant testified as follows: "Q. And not one of those streams had a fixed or permanent bed or course there which

it always followed, did it? A. Well, I would consider that the main channel, what we called the main channel at that time, was located about where it is confined at the present time. Q. That is about the center of the wash? A. That is about where the river is confined at the present time. I would consider that about the main channel of the river in those days. That point, I should judge, is probably six hundred feet from the foot of the bluff, maybe a little less than that, but it is several feet, anyhow, west of the bluff. It is also west of these stakes." We may at this point inquire as to where the bank of the river was at the time of the making of the Hollenbeck deed, for the determination of that question is important to the contention of appellant that the westerly line of its property was intended to be located upon that bank. We have shown by the testimony which appellant offered that the Los Angeles River, during times of normal water flow, is at best a trickling stream; sometimes it carries no water whatsoever. That this stream so flowing under normal conditions traverses about the center of the "official" river-bed and describes a line between 300 and 450 feet westerly from the westerly boundary of appellant's property as described in the Hollenbeck deed. [1] Can it be that in the case of a non-navigable stream which carries a large volume of storm water during rainy seasons and which spreads over a wide area of sandy wash, its "banks" are to be considered as the lines bounding the extreme limits of the storm flow? It seems both unreasonable and illogical to so define the boundaries thereof. It is well known that the storm waters in California, when traveling through a flat or level country, spread out and meander, washing away the top soil and leaving exposed sand and boulders for widths of many hundreds of feet, or even covering a width of a mile or more. Such was precisely the course and action of the waters which have traversed the so-called Los Angeles River bed, according to the undisputed testimony, and especially that produced by appellant itself. In most of the cases where such sandy wastes or washes carry only storm floods in winter, it would be improper to bring them within the definition of a "non-navigable stream." By the term "stream" we understand is meant water which has a regular flow, and not that deposited during times of storm which immediately runs away and leaves

in its course a mere stretch of sand and rock. By the same course of reasoning, it must be said, we think, that where a non-navigable stream in fact exists within the legal definition of the term, its banks must be located approximately at the edges of the stream as the latter flows during the times of normal water. **[2]** The evidence in this case is sufficient to show that during such ordinary times some water habitually ran in the Los Angeles River bed. The evidence also very conclusively shows that, considering the ordinary flow of the stream, its banks would be located wholly within the easterly and westerly lines established by the city as defining the "official bed." We have already learned that the westerly line of appellant's property (referring to the description in the Hollenbeck deed) is located easterly from the easterly boundary of the official bed at least three hundred feet. With this intervening distance, clearly it may not be said that that westerly line was coincident with the easterly bank of the non-navigable stream. Counsel argues at much length and cites many authorities to the point that where a line described in a deed is substantially coincident with the bank of a stream, it will be assumed as a matter of interpretation that the grantor intended to make such bank the boundary line, in which event the grantee by force of the law would take to the center of the stream or thread thereof. From what has been said it has appeared that we are wholly out of agreement with appellant in the premises assumed. A line three hundred feet away from the bank is not "substantially" located upon the bank. Neither does the rule that monuments control courses have any application here, because the deed did not fix the river bank as a monument to commence with. The phrase "near said river," as used in the instrument of conveyance, was not equivalent to a description reading "at the river bank." Like reason can be found for distinguishing all of the cases cited by appellant from the one which the facts here illustrate. That the city did not divest itself by the Hollenbeck deed of its title to the strip of land intervening between the westerly boundary line described in said deed and the easterly bank of the Los Angeles River, we think is entirely clear, taking into consideration the precise description embodied in the instrument of conveyance, together with the undisputed facts referring to the natural conditions exist-

ing at the time the deed was made. So convinced are we of the correctness of the judgment that we think it unnecessary to investigate the matter of certain rulings of the trial judge which appellant complains of, in refusing and admitting certain ordinances and maps in evidence. Upon the case as we have illustrated it, any error, assuming such to exist, could not have resulted in a miscarriage of justice. The findings of the court sufficiently covered the issues made by the pleadings.

The judgment appealed from is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1920.

All the Justices concurred.