GEORGE COULTHARD, Appellant, v. G. D. McINTOSH and PRESS McINTOSH, Appellees.

Public lands:  BOUNDARIES:  ABANDONED RIVER BED:  INSTRUCTIONS.   In seeking to recover possession of part of an abandoned river bed under a patent from the state, resisted on the ground that the

land was 'not within the state when the grant was made, an instruction, that if the river had gradually shifted its channel so that the land in controversy was not on the Iowa side of the middle thread of the stream when an avulsion occurred changing its course, the jury must find for defendant, as the validity of the patent from the state depended on the fact that the land was on the Iowa side of the abandoned river-bed, did not authorize the jury to pass on the validity of the patent, but told them what facts were essential to its validity, which it was the province of the jury to determine.

**Same:** SURVEY AND PATENT: CONCLUSIVENESS.  A survey, plat and patent by the state, of an abandoned river-bed, pursuant to statutory authority, may be presumptive evidence that the land lies within the state, but it is not conclusive upon one who alleged that it lies outside the state boundary, and therefore, beyond the jurisdiction of the state; for generally speaking, there can be no adjudication or determination of title to property so conclusive that it may not be avoided by showing an entire absence of essential jurisdictional facts; and the survey and patent by this state, of lands which are actually within the boundary of an adjoining state, are void.

**Action of right:** BURDEN OF PROOF: DEFENSE BY TRESPASSER.  In an action to recover the possession of the land, the plaintiff must rely on his own superior right or title, which he has the burden of showing, and the defendant, though a trespasser, may defend the action on the ground of prior possession.

**State boundaries:** RIVERS: CHANGE IN CHANNEL.  Upon a gradual change of the channel of a river, which is the boundary between two states, the boundary line of the state shifts with it; but such change in boundary does not follow sudden or violent changes in the channel.

**Same:** EVIDENCE.  The testimony of old settlers, who have been familiar with a river at the place in question, is competent to show a shifting of the channel, and will support a finding to that effect.

*Appeal from Harrison District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, JULY 2, 1909.

ACTION at law to recover possession of a tract of land.

Verdict and judgment for defendants, and plaintiff appeals.
—*Affirmed.*

*J. E. Dewell* and *Roadifer & Arthur,* for appellant.

*S. H. Cochran,* for appellees.

WEAVER, J.—The land in controversy is upon or near the western boundary of the state, and the dispute to be here settled is only another phase of the confusion in titles which has arisen from the frequent shiftings of the channel of the Missouri River. The land along the eastern border of the river was surveyed by the United States government in the year 1851 or 1852. That survey showed township 79 N. of range 45 W. to be less than the standard measurement of six miles square, being abbreviated to some extent on both its western and southern borders by the river. Section 34 of this township was one of the sections which were made fractional because of the river on the south. The testimony tends to show that from the date of the survey for a period of years the river, which at this point flowed in an easterly direction, gradually encroached upon the Iowa shore, until practically all of fractional section 34, with other lands on the east and west were eroded away, the river channel shifting in the same direction until its bank on that side nearly or quite coincided with the north line of said section; the stream being at ordinary stages about a half mile wide. After reaching the eastern, or rather northeastern, limit in the year 1857 the river, by some flood or avulsion, suddenly developed a new channel a mile or more to the south or southwest, leaving the old channel practically empty. About the same time a stream known as Soldier River, which had before emptied into the Missouri just to the northwest of section 34, declined to follow the Missouri in its recession to the southwest, and sent its waters along the channel abandoned by the larger

stream until it joined the main river several miles further down its course. In the course of time the abandoned channel, except so far as it had been appropriated by the Soldier River, became, in part at least, dry and of value for agricultural purposes. The land now in question is part of that which was uncovered by the avulsion or sudden change in the river's course, which we have referred to as taking place in the year 1857. Some fourteen years prior to the commencement of this proceeding the defendants, or one of them, entered upon said tract under a claim of right of some nature, and have since maintained such possession. By an act of the Thirtieth General Assembly of Iowa, approved April 11, 1904, provision was made for the survey and sale of abandoned riverbeds "within the jurisdiction of the state of Iowa" (Acts 1904, chapter 185). Thereafter, on application by the plaintiff, a survey was made of the lands lying immediately south and west of the Iowa bank of the abandoned channel here in controversy. By this survey there were platted several lots, claimed to be within the area of said channel, and on the Iowa side of the central thread thereof. Of these tracts it is alleged that lot No. 8 covers in part the land occupied and claimed by the defendants. After the survey had been completed, plaintiff received from the state of Iowa a patent or deed of conveyance, which instrument, after reciting the statute, the survey, the application by the plaintiff, the appraisement of the land, and the payment by plaintiff of his accepted bid therefor, and the grant made to him in pursuance of said sale, adds thereto the following clause: "This deed or patent is for the purpose of conveying such title and interest in the above-described tracts of land as the state owns or possesses and has the right to convey." It is under this patent that plaintiff asserts title and right of possession. The defendants deny that plaintiff ever acquired any title to the tract in controversy, allege that it lies within the territory and jurisdiction of the state of

Nebraska, and that they are the rightful owners thereof by adverse possession.

In submitting the case for a verdict the court, instructed the jury, in effect, that the issue between the parties turned entirely upon the question whether the land in question lies upon the Iowa side of the boundary line, and therefore within the jurisdiction and authority of the state to make title thereto to the plaintiff. As to the rules of law governing the consideration of this question the court instructed as follows:

(5) The law with reference to changes in river boundaries is this: That when the banks of a navigable stream or river, such as the Missouri, change by slow process not visible to ordinary observation, the river still continues to mark the boundaries of the respective states along its banks; but, when by some sudden avulsion of the stream what is known as a cut-off is created, so that a body of land is detached in such a way that it is capable of being identified. the boundary lines, whether they be those of the state or of property owners, remain unchanged. There is, however, this important difference to be kept in mind between the boundaries of a state and those that limit the rights of property owners, in that property owners on banks of navigable streams own only to the water's edge, whereas each state extends up to the middle thread of the stream; and, in case of such sudden avulsion of the river, the respective states—in this case the states of Iowa and Nebraska—each become the owner of the riverbed so abandoned, to the extent of the middle thread of the stream as it formerly flowed, upon its respective side thereof.

(6) The abandoned channels of riverbeds, referred to in the laws of the Thirtieth General Assembly, are not such as are created by slow and imperceptible accretions upon one side and wearing away upon the other, even though the place where the river formerly flowed may be by these processes entirely deserted by its waters. This statute refers only to riverbeds abandoned by sudden changes or avulsions of the river, such as I have before referred to.

(7) The plaintiff of necessity claims that there was such an avulsion; for, if there was no such avulsion, there

would be no land to which he could claim title under this statute. The defendant also claims there was an avulsion, or sudden change in the channel of the river, about 1857, but the parties do not agree as to the time when this avulsion occurred.

(8) The state having issued to the plaintiff a patent to this land is presumptive evidence that the land conveyed thereby was part of an abandoned riverbed or channel which, under the laws above stated, belonged to the state of Iowa. But this presumption is not conclusive, and ought not to prevail if a preponderance of the evidence shows that such is not the fact.

(9) If the defendant has established by a preponderance of the evidence that the land occupied by him was not on the Iowa or left side of the middle thread of the Missouri river as it ran at the time the avulsion or cut-off in question occurred, then he will be entitled to your verdict; but, if he has failed to show such a state of facts by a preponderance of the evidence, then your verdict should be for the plaintiff.

(10) The plat, which has been offered in evidence by the plaintiff, shows that the lands claimed by him are situated within the meander lines of the Missouri river as located by the survey of 1852; but the defendant claims that after this survey was made, the channel of the river gradually shifted to the north until in 1857, when, as defendants claim, the avulsion occurred which affected this land in controversy. If the river at the point in question was so far out of its channel as marked by the survey of 1852 that the land occupied by defendant could not have been within its bed, and on the Iowa side of the middle thread of the stream, when the avulsion occurred, then the defendants will be entitled to your verdict, for the validity of the patent issued to plaintiff, must depend on whether the land embraced therein was in fact on the Iowa side of an abandoned bed of the Missouri River, as the term 'abandonment' is defined and explained in these instructions. But, as before stated, the burden of proof is upon the defendant to make out such invalidity of the patent by the preponderance of the evidence.

The appellant challenges the correctness of these in-

structions, as well as the sufficiency of the evidence to sustain the verdict.

I.  It is said that the court erred in permitting the jury to pass upon the validity of·the patent.  The charge of the court is not vulnerable to this objection.  The jury were not permitted to determine the legal proposition involved in this case, but were told what facts, if proven, would render the patent of no effect upon the title to the land. Whether these facts had been established by the evidence was clearly a jury question.

1. PUBLIC LANDS: boundaries: abandoned river bed: instructions.

While it may be true, and the court so instructed the jury, that the survey, plat and patent by the state authorities, acting ostensibly under the statute referred to, made a presumptive or *prima facie* case that the land described in said proceedings was an abandoned riverbed within the state of Iowa, such presumption is clearly not conclusive upon the party who alleges that in fact the land was on the Nebraska side of the boundary, and therefore wholly beyond the authority and jurisdiction of the state officers or of the state itself. Generally speaking, there can be no adjudication or determination of the title to property so `final or conclusive that a party adversely interested may not avoid it by showing an entire absence of an essential jurisdictional fact. And certainly if the land in controversy be on the Nebraska side of the boundary, it does not come within the contemplation of chapter 185, of the Laws of the Thirtieth General Assembly, and any survey of the riverbed under the authority of that statute, which by mistake or otherwise extends beyond the central thread of. the abandoned channel into the territorial domain of another state, is, to the extent of such intrusion, and upon the most familiar principles, to the same extent 'void and of no effect.

2. SAME: survey and patent: conclusiveness.

II.  Appellant also contends that defendants are at best mere trespassers upon the land, and therefore not en-

titled to defend the action now before us. The action here pending is one of right—the equivalent of the ancient action in ejectment. The defend-ants are in possession acquired by them long before appellant acquired the alleged title under which he demands possession for himself. It is a time-honored rule that the defendant in such proceedings, even though a trespasser will not be ousted at the suit of another who can not show right or title in himself. In other words, to use a familiar expression, he must recover, if at all, on the strength of his own claim of right or title, and not upon the weakness of the defense. It is therefore the right of the defendant to stand upon his prior possession, with or without claim of right, and put in issue the claim of the plaintiff, on whom rests the burden of showing a superior right. *Reed v. Wright,* 2 G. Greene, 15; *Lathrop v. Emigrant Co.,* 41 Iowa, 547; *McCarty v. Rochel,* 85 Iowa, 427; *Hurlby v. Street,* 29 Iowa, 429; *Schlosser v. Cruickshank,* 96 Iowa, 414; *Glenn v. Jeffrey,* 75 Iowa, 20. It was therefore the legal right of the defendants to contest the validity of the patent held by the appellant so far as it affected the title to this land; and, if the showing made by them was sufficient to sustain a finding in their favor, it is final as to all parties. Nor is the effect of this, as counsel claim, to make the jury an arbiter to settle a vexed question of state boundaries. Both court and jury assume that the boundary has already been settled by proper authority to be the central thread of the main channel of the river, and whether a given point or location is on the Iowa side or the Nebraska side of the line is a simple question of fact, the decision of which does not operate in the least to unsettle or change or modify the territorial limits or authority of either of the sovereign states between whose jurisdictions such line has been drawn. If a man be charged with crime in this state, and upon his trial introduces evidence tending to show that the act

3. ACTION OF
   RIGHT: burden
   of proof:
   defense by
   trespasser.

charged against him was done in another state, and not in the state of Iowa, this defense could not be ruled out on the ground that the jury is not a competent body to settle boundaries between states.

Nor is there any merit in the claim that the verdict is without substantial support in the evidence. The boundary line being, as we must assume, the middle of the main channel of the river, and the river being peculiarly subject to gradual encroachment upon its banks, resulting in a like gradual swaying of such channel from right to left, or *vice versa,* followed perhaps by a similar recession in the direction of its former bed, it follows upon general principles of the law of riparian rights, as applied both to individual landowners and to sovereign states recognizing the stream as a common boundary, that the location of the division line moves with the movement of the channel; and such line as it existed when the avulsion of 1857 occurred may not have been coincident with the line as it existed at the date of the government survey in 1852. The defendants as we have seen assert that between 1852 and 1857 a change did in fact take place, and that the river had eaten its way into the Iowa shore along the water front of section 34, with a corresponding movement in the same direction of the central thread of the channel.

4. STATE BOUNDARIES: rivers: change in channel.

This claim has support, as we have said, in the testimony of several witnesses, among whom are early settlers who have known the stream at this point for more than half a century. In the very nature of things the changes which have marked the region during this prolonged period are such as serve to envelop all statements made from memory with some degree of uncertainty, but the testimony offered was competent, the best which the circumstances of the case afforded, and it gives reasonable grounds for the conclusion reached by the jury. Under the evidence the jury was justified in finding that

5. SAME: evidence.

the river at ordinary stages was then about a half mile in width, and that the median line of the channel (and therefore the state boundary) was in general within about a fourth of a mile of the north line of said section 34, a location which is very considerably north and east of the channel as retraced by the survey under which the appellant claims in this action. Wherever the channel then ran its central thread constitutes the state line; for, as we have already seen, while said line follows the gradual variations of the course of the stream, it does not follow it in its sudden or violent changes. In support of the verdict we are in duty bound to give to the testimony the most favorable construction of which it is reasonably capable for the defense, and, doing so, it is very clear that the land claimed by the defendants is on the Nebraska side of the state boundary as left by the avulsion of 1857, and that the patent held by plaintiff had no effect to convey to him any right or title therein. The law, as stated by the trial court and approved in this opinion, finds ample support in *Nebraska v. Iowa,* 143 U. S. 359 (12 Sup. Ct. 396, 36 L. Ed. 186), *Missouri v. Nebraska,* 196 U. S. 23 (25 Sup. Ct. 155, 49 L. Ed. 372) and *Coulthard v. Davis,* 101 Iowa, 625.

We find no error in the record, and the judgment of the district court is *affirmed.*