W. G. KITTERIDGE, Appellee, v. BRADFORD RITTER, Appellant.

BOUNDARIES: Between States—Sudden or Gradual Avulsion of
1 Rivers—Accretion. If, by gradual and slow process, the channel of a state boundary stream be changed, the boundaries of the respective states will change accordingly. On the other hand, if there be some sudden avulsion of the stream, whereby it suddenly changes its channel in such a way as to cut off a body of land, and the body of land so detached is capable of being identified as such, then neither the boundary line of the respective states nor that of riparian property owners will be changed by such avulsion or cut-off. This statement of the law, practically conceded by the litigants in this action, applied under the evidence and held to show that the land in question was located in Iowa by accretion, and not in Nebraska by avulsion.

**NAVIGABLE WATERS:** Riparian Rights—Accretion—Avulsion—
2  Presumptions. When land borders the Iowa side of the Missouri
river and lies between the riparian lots, as surveyed by the gov-
ernment, and the present east bank of said river, the following
two rebuttable presumptions will be indulged, to wit: (1) That
the land is in Iowa, and (2) that it is the result of accretion,
and not avulsion.

**JUDGMENT:** Res Judicata—Non-Identity of Parties and Subject-
3  Matter—Accretion and Avulsion. An adjudication that certain
land was the result of an avulsion and not of accretion is not an
adjudication as to other lands located three miles from the former
land, especially when the parties to the action in regard to the
latter lands were not parties to the former action.

**ESTOPPEL:** Recital in Deeds as to Location of Lands—Riparian
4  Rights—Impeaching Title. Certain recitals in regard to the sup-
posed location of lands in Nebraska reviewed, and *held* not to
estop plaintiff from claiming that certain lands were in Iowa as
the result of accretion.

*Appeal from Harrison District Court.*—HON. A. B. THORNELL,
Judge.

FRIDAY, APRIL 9, 1915.

REHEARING DENIED TUESDAY, OCTOBER 5, 1915.

ACTION to quiet title and for a writ of possession. There
was a decree for the plaintiff and the defendant appeals.—
*Affirmed.*

*Cochran & Barrett,* for appellant.

*Roadifer & Roadifer* and *J. S. Dewell,* for appellee.

EVANS, J.—I. The lands involved are located upon the
bottoms of the Missouri river. The plaintiff claims the
lands as accretions to other lands included in the original
government survey and now owned by plain-
tiff as alleged. The defendant claims the
lands under alleged tax title in pursuance of
a purchase at tax sale in Washington county,
Nebraska. The controlling question in the case is whether

1. BOUNDARIES:
between states:
sudden or grad-
ual avulsion of
rivers: accre-
tion.

these lands are a part of Washington county, Nebraska, or whether they are a part of Harrison county, Iowa. If the former, the defendant should prevail; if the latter, the plaintiff should prevail. The parties present no material dispute over legal propositions. The controversy is one of fact.

The Missouri river is concededly a navigable stream. This river is the original boundary line between Iowa and Nebraska. The jurisdiction of each state extended to the middle thread of the stream. Riparian owners on either side held title to the water's edge. It is the law that if by gradual and slow process the channel of the stream be changed, the boundaries of the respective states will change accordingly; that is to say, the stream will still be deemed the boundary between the states, notwithstanding the change in the channel. On the other hand, if there be some sudden avulsion of the stream, whereby it suddenly changes its channel in such a way as to cut off a body of land, and the body of land so detached is capable of being identified as such, then the boundary lines either of the respective states or of riparian property owners will not be changed by such avulsion or cut-off.

The land in dispute herein is concededly on the east side of the Missouri river. At the time of the original government survey in the 50's, much of this land, and perhaps all of it, was not existent in Iowa. Its location under the sky,—that is to say, its points of latitude and longitude,—was within the boundaries of Nebraska. The question, therefore, is whether this land was thrown up as accretion on the east side of the river by the gradual recession of the river towards the west, or whether there was a sudden avulsion of the river whereby the body of land upon this location was cut off from the state of Nebraska in such a manner that it can be identified as a body of land existing in Nebraska before such avulsion. If the latter be the fact, then such detached body of land would still be deemed within the boundaries of Nebraska. The former owner's title thereto would still continue. In so far as such detached body of land extended to the water's edge upon the

eastern bank of the river, it would become riparian and future accretions would attach thereto.

The contention for the defendant is that this is what occurred. Turning now to the salient facts, the lands in dispute (if in Iowa) are in Cincinnati township, Harrison county. They are in sections 5, 6, and 7. Cincinnati township extends to the Missouri river. Northerly and westerly from Cincinnati township is Clay township; that is to say, Clay township is partly coterminus with the north line of Cincinnati township. The east line of Cincinnati township is 3½ miles further east than the east line of Clay township. Clay township is also upon the river. Previous cases which have been before us and which will be referred to later involved lands in Clay township. When the original government survey was made, the east meander line of the river extended in a southwesterly course across the northwestern part of section 5. It cut off the greater part of section 6, so as to leave a triangle in the southeast part thereof. It also cut off a part of section 7. The survey laid off certain lots upon such meander line as follows: 1, 2, 3, 5, 6, 7, and 8 in section 5; 1, 2, 3 in section 6; 1 and 2 in section 7. The plaintiff exhibits paper title to lots 2, 3, 7, and 8 in section 5 and to all the lots named in sections 6 and 7. The testimony for plaintiff, however, shows that after the government survey, the river gradually pushed east for some distance beyond these lots, and they were all eaten up in the process; that thereafter, the river receded toward the south and west and rebuilt the land upon the same locations, and that it continued to recede to its present position, leaving accretions, of course, behind every recession.

We may note here the question of whether the owner of the original lots, after their destruction, had any right to assert ownership in the new ground later appearing upon the same location, or whether such new ground should be deemed accretion to the riparian lands upon the uttermost eastern bank,—this question is not in the case. It is enough, for the purpose of this case, that he did assert such ownership and

went into possession and continued his possession for 20 years and his right was never challenged by such riparian owners. It also appears that, as between the riparian owners, they have agreed among themselves upon a division of the accretions, so that we have no controversy of that kind before us.

On behalf of defendant, it is claimed that, in 1881, there was a sudden avulsion, whereby the channel of the river was changed so as to cut off a body of land which had theretofore been upon the west side of the river, and

2. NAVIGABLE WATERS: riparian rights: accretion: avulsion: presumptions.

that the land in question is a part of such detached body. We have only to do, therefore, with the weight of the evidence as bearing upon these two contentions. There are two or three important presumptions which aid the plaintiff greatly and which impose a considerable burden upon the defendant: (1) The land, being concededly on the east side of the Missouri river, is presumed to be in Iowa. (2) Inasmuch as the land concededly lies between the riparian lots as surveyed by the government and the present east bank of the Missouri river, it is presumed to be the result of accretion and not of avulsion. *Coulthard v. McIntosh,* 143 Iowa 389; *Coulthard v. Stevens,* 84 Iowa 241; *Jefferis v. East Omaha Land Co.,* 134 U. S. 178; *Mitchell v. Smale,* 140 U. S. 406; *Hardin v. Jordan,* 140 U. S. 371; *Nebraska v. Iowa,* 145 U. S. 519; *State of Iowa v. Illinois,* 147 U. S. 1; *St. Paul & P. R. Co. v. Schurmeir,* 7 Wall. 272; *Missouri v. Kentucky,* 11 Wall. 395; *Nebraska v. Iowa,* 143 U. S. 359.

We have read and reread the entire testimony in the record; likewise the briefs. We think that the evidence clearly fails to overcome the foregoing presumptions. Indeed, the clear preponderance of the evidence sustains such presumptions. The evidence offered on behalf of the defendant shows that the particular land involved in this controversy is accretion land. The accretion must have taken place on the Iowa side of the river. It is claimed, however, that it became an accretion to the land which had been cut off by the avulsion. The testimony is very indefinite as to where the particular

body of land was located which was so cut off and as to how much of such body there was. Some of the witnesses spoke of it as 70 or 80 acres; whereas the body of accretion lands of which the land in suit is a part included several thousand acres. The land in suit includes several hundred acres. No landmark was ever found upon any part of these lands which would tend to identify any part thereof as "cut-off" land. The composition of the soil is that of accretion rather than that of the older formation. Granting that if a body of Nebraska land had been cut off and had become riparian property upon the east bank, then it would take the accretions which should thereafter form by the recession of the river; yet, in order to overcome the presumptions already stated, it would be incumbent upon the defendant to show either that the land claimed by him was a part of the cut-off lands or that it was a part of the accretion which attached to such "cut-off" land. There is no attempt at identification of that kind in the evidence. The case is submitted and argued on the theory that the "cut-off" land became the riparian land along the entire west front of section 5. We hold, therefore, that the evidence does not sustain the contention that the land in dispute is Nebraska land. The defendant, therefore, acquired nothing by his alleged tax deed. Defendant's counsel have conceded in argument that the plaintiff has shown a good chain of title covering the *location* which formerly existed on the meander line according to the government survey. We have no need, therefore, to consider the formal sufficiency of the title or the question of adverse possession.

II. The defendant pleaded prior adjudication and urges the same contention in argument. This contention is predicated upon the case of *Coulthard v. Davis*, 101 Iowa 625. It is sufficient to say that none of the parties herein were parties to such suit, nor was any part of this land or the title thereto involved in said suit. The argument is that there was a finding in that case that there had been a sudden avulsion of the river and that the land involved in

3. JUDGMENT: *res judicata*: non-identity of parties and sub-ject-matter: accretion and avulsion.

that case was "cut-off" land and that it was a part of the
state of Nebraska. The location of such land was two or three
miles to the northwest of the land involved herein. No ques-
tion of adjudication is, therefore, presented. The finding of
facts in such former case might have its influence if the case
sustained any necessary relation to the present case. But the
finding of facts therein was necessarily controlled by the evi-
dence in that record; whereas, the finding of facts in this
case must likewise be controlled by the evidence in this record.
Inconsistent finding of facts upon successive trials is not an
unusual result of litigation. But there is no necessary in-
consistency between the finding herein and the finding in the
cited case.

III. It is urged by the defendant that some of the deeds
under which plaintiff claims title described the land as being
located in Washington county, Nebraska, and that the plain-
tiff is therefore bound by the recitals of the
deed. It does appear that some of the deeds
contain very comprehensive and sweeping de-
scriptions, which were apparently intended to
carry all the rights of the grantor, regardless
of whether the property should be deemed as in Washington
county, Nebraska, or in Harrison county, Iowa. For instance,
one quitclaim deed of a somewhat indefinite tract contains the
following:

4. ESTOPPEL: re-
   cital in deeds
   as to location
   of lands: ripa-
   rian rights:
   impeaching
   title.

"The land heretofore described as mainly in Twp. 78,
Range 45 in Harrison County, State of Iowa, but a portion
of it however is supposed to be in the extreme east portion
of Washington County, State of Neb., though all on the east
and Iowa side of the Missouri River, where it now runs."

Another quitclaim deed describes the lands by metes and
bounds, using the original government survey in Nebraska for
the purpose of description as follows:

"Commencing at a cedar stake which is south 78 degrees and 15 minutes east 516 feet from the government meander corner between Section 2, Township 19, Range 11, and 35, Township 20, Range 11 in Washington County, Nebraska, running thence south 52 degrees and 55 minutes east 2077 feet, thence south 80 degrees and 50 minutes east to the right bank of the Missouri river, thence up that bank 1562 feet; thence north 80 degrees, 15 minutes west to the place of beginning, containing 133 acres more or less, and the same being in Harrison County, Iowa," etc.

It will be noted here that the deed expressly asserts the location of the land to be in Harrison county, Iowa. Another quitclaim deed contains the following:

"A part of which is supposed to be situated in Washington County, State of Nebraska, although situated on the east side of the Missouri river and a portion of which is situated in Township 79, Range 45 in Harrison County, Iowa, and described as near as may be as follows:"

This part of the description, however, dealt with lands in Clay township in the vicinity of the land involved in *Coulthard v. Davis*, 101 Iowa 625. The same description was used in two or three other quitclaim deeds, and in each case related to land in Clay township in the same vicinity. We think there was nothing in such recital which in any manner estops the plaintiff or impeaches his title.

We reach the conclusion that the case was properly decided by the trial court, and its decree is accordingly *Affirmed.*

DEEMER, C. J., LADD and PRESTON, JJ., concur.