GEORGE COULTHARD, Appellee, v. JOHN STEVENS *et al.*, Appellants.

**Accretions:** TITLE: USE AND OCCUPATION. Alluvion which is added to land bordering upon a river, whether by gradual accretions or by being thrown up suddenly by floods, or by a change in the channel of the river, if not subject to identification as disruptions from the lands of another, becomes the property of the owner of the border land, and he is entitled to recover for the use and occupation thereof of one who has wrongfully entered upon and cultivated the same.

*Appeal from Harrison District Court.*—HON. G. W. WAKEFIELD, Judge.

FRIDAY, JANUARY 22, 1892.

ACTION to recover for the use and occupation of certain land. The defendant denies generally the allegations of the petition, and avers that he rented the land of one Palen, and that the plaintiff had no right, title or interest in the land. Palen, who intervenes, claims, as owner of the land, and as lessor of the defendant, one third of the corn raised by the defendant on the land which was reserved to the intervenor as rent, and was seized upon an attachment issued in this case. From a verdict and judgment for the plaintiff, the defendant and the intervenor appeal.—*Affirmed.*

*S. H. Cochran,* for appellants.

*Dewell & McGavern,* for appellee.

KINNE, J.—I. The land, the title whereof is brought in controversy in this action, is situated immediately adjacent to the banks of the Missouri river. It is not disputed that the plaintiff acquired, by contract of purchase from the county, three lots of land, which it acquired under the swamp land grant. Nearly all of the land cultivated by the defendant, to recover the value of the use whereof this action is brought, lies between the meandered line of these lots and the Missouri river, and is claimed by the plaintiff as accretions to his land. The defendant and the intervenor not only deny that the land is accretions, but insist that the time and manner of its deposit preclude its being so treated.

George Coulthard testified: "The floods made an immense pile of land there." "I think this land was put there from 1860 down to the present time, caused

by gradual formation to it." "It has been a good many years making it."

Charles Pate, a witness for the defendant and the intervenor, testified: "I have lived in Harrison county thirty-four years. I have worked on the Missouri river, rafting logs, from time to time, for last twenty years. I am familiar with the river. I know where the meander line of these Coulthard lots was. All this land in controversy was thrown up onto these lots suddenly. It was put there pretty much in one summer. As near as I remember, it was in the summer of 1874 the river threw up against there fractional pieces about one half mile in width. I could see it being thrown up. It would make strips of land in two hours' time one hundred and fifty feet to two hundred feet wide right at this place, opposite Coulthard's lots. Stevens commenced farming this land about three years ago. All of his cornfield was suddenly formed." *Cross-examination*: "I know where the old meander line was. I rafted by it. This land was thrown up so you could see it build there. I have been over this Coulthard land frequently. The river changed its channel. It threw up the land suddenly. There were jump-offs between the old meander line and the river. These jump-offs represent the layers suddenly thrown in there."

Lewis Meyers testified: "This formation was made by a sudden change in the channel. I saw some of the first land formed. It was by sudden cut of the river. I have never known the river along there making anything but sudden change. By a 'sudden change,' I mean in the course of a week or a month; and generally at the time of high water is when the changes occur."

II. The district court gave this instruction to the jury:

"The uncontroverted evidence in this case shows that lots one, two and three, in section thirty-four,

township seventy-nine, range forty-five, passed to the state of Iowa under the swamp grant of September 28, 1850, and was certified to the state; and thereafter, in 1860, the state patented the said land to Harrison county, and that the plaintiff is now the owner of the same, under a contract made with Harrison county in 1887. The evidence further shows that one boundary of the lots was the meandered shore line of the Missouri river, and that since the survey by the government the land in question, occupied by the defendant, not originally a part of said lots, has been added to said lots, or some of them, by the action of the waters of the Missouri river, and under such circumstances, as shown by the evidence, that, under the law of accretions, such added land became a part of the lots in question, or some of them; and you are, therefore, instructed that, as a matter of law, under the evidence, the plaintiff is the owner of the tract of land occupied by the defendant, and upon which he raised a crop for the season of 1889. The plaintiff will, therefore, be entitled to recover of the defendant the reasonable value of the use of such land for the season of 1889, and you are instructed that the burden is upon the plaintiff to prove such reasonable value. You will, therefore, assess and determine from the evidence the reasonable value of the use of such premises so occupied by the defendant, as shown by the evidence, and find the amount thereof in the plaintiff's favor. You are further instructed that, the title to the land being in the plaintiff, the occupancy by the defendant having been shown by the uncontroverted evidence, the defendant is not entitled to recover upon the counterclaim anything for alleged damages by reason of the suing out of the attachment herein. You are also instructed that the intervenor is not entitled to recover, for the same reason, and his petition is dismissed."

The defendant asked the district court to instruct the jury as follows:

"*Second.* 'Accretion,' under the law, is defined to be the imperceptible adding of land thrown up by a sea or river gradually. The land in question was added to lots one, two and three, but, unless it was slowly, gradually, and imperceptibly washed up or thrown up to said fractions by the river, the plaintiff cannot recover.

"*Third.* If you find from the evidence that the land in question was suddenly made by the change in the channel of the river, or by the sudden cutting of the opposite bank, then your verdict should be for the defendant."

These instructions were refused.

III. "Accretion, to vest a title in the owner of the abutting shore, must be so slow that its increase should be imperceptible." 1 American & English Encyclopedia of Law, p. 137. To acquire title to land as alluvion, it is necessary that its increase should have been imperceptible; that is, that the amount added in each moment of time should not be perceived. It has been said: "It is enough if it were done so that they could not perceive the progress at the time it was being made." 3 Washburn on Real Property [4 Ed.] p. 59; *County of St. Clair v. Lovingston*, 23 Wall. 46; *Jefferis v. Land Co.*, 134 U. S. 178, 10 Sup. Ct. Rep. 518. "The terms 'alluvion,' on the one hand, and 'gradual' and 'imperceptible' accretion, on the other, are used by writers to contradistinguish a sudden disruption of a piece of ground from one man's land to another, which may be followed and identified, from that increment which slowly or rapidly results from floods, but which is utterly beyond the power of identification. * * * The length of time during formation is not material." *Benson v. Morrow*, 61 Mo. 352.

It will be noticed that these definitions are not entirely in accord. We think the true rule is the doctrine laid down in the case last quoted. Applying it to the facts in this case, it will be seen that there is no evidence

ACCRETIONS:
title: use and
occupation.

tending to show that these additions to the land of the plaintiff, and which he claims as accretions, were caused by a sudden disruption of a piece of ground from the land of another, and which could be followed and identified. Nearly all the testimony is to the effect that this land in controversy has been years in forming, and that the process has been gradual. But one witness testifies to such a sudden formation as is comprehended in the definition given, and there is an entire absence of evidence as to anyone being able to identify the added land. Conceding that, under the rule long since adopted by this court, the case should have been sent to the jury if there was any evidence tending to establish the claim of the defendant and that of the intervenor, we think the evidence fully justified the instruction given by the district court, and its judgment is AFFIRMED.