FILLMORE NOYES, Appellant, v. EDWARD COLLINS.

**Riparian Rights.** Where a lake is drained in one year by a ditch and the cutting in of a river, an owner of land to the shore line acquires no title to the lake bed, by accretion or reliction.

**SAME.** Title to land on a lake or pond, not navigable, does not extend beyond the natural shore.

*Appeal from Harrison District Court.*—HON. G. W. WAKEFIELD, Judge.

FRIDAY, DECEMBER 14, 1894.

ACTION in ejectment. Judgment for defendant, and the plaintiff appealed.—*Affirmed.*

*Jesse T. Davis* for appellant.

*S. H. Cochran* for appellee.

GRANGER, C. J.—I.   The plaintiff is the owner of lot number 6, section 15, township 80, range 45, west of the fifth principal meridian in Harrison county. Section 15 is a part of the swamp land grant from the United States to the state of Iowa, and from the state to Harrison county.   The lot was conveyed by the county to one Morgaridge, and, after *mesne* conveyances, the title vested in the plaintiff.   What was known as "Dry Lake" was in part on section 15, and was a body of water from five to seven miles in length, and from eighty to one hundred rods in width.   Its depth was from three to seven feet.   The boundaries of lot number 6 in the deeds of conveyance are as follows: "Commencing at the southeast corner of sec. 15, Twp. 80, R. 45, and running to Dry Lake, thence southwest, by the meanders of said Dry Lake, to the south line of section 15; thence east along said line to the place of beginning,—containing thirteen acres, more or less."   Because of ditches made by Harrison county, and the action of the Missouri river in washing away its banks, and of its waters spreading into Dry Lake and depositing large quantities of earth, the lake, about 1881, ceased to be.   What was the bed of the lake has been, by the county, divided into lots and sold, and the defendant owns, in pursuance of such a sale, lot number 7.   It is appellant's claim that, as Dry Lake was an unnavigable body of water, he takes, by the conveyance to him, to the center thread of it, which would include what is now lot number 7; and this action is for its possession.   If appellant's claim is sustained, instead of about thirteen acres, as described in his deed, he gets some twenty-three or twenty-four acres of land.   Some claim is made by appellant in argument that he is entitled to this additional land under the law of accretions.   To

our minds, such law has no application to the facts. It is not a case of increase to the land by gradual deposits of soil through natural causes; but by both natural and artificial causes the lake was both drained and filled. Nor is it a case where there was such gradual recession of the water that the doctrine of reliction applies. It appears from the testimony that the ditch made by the county drained the lake to some extent at one end, and it seems that in 1881 the "Missouri river cut into the lake and drained the same." It is said in evidence: "The water all disappeared in the lake in 1881." The rule is, in order to entitle the adjoining property holders to the right of possession of land left bare by receding water, that the recession must be gradual, slow, and imperceptible. In case of a sudden and sensible recession of the water, the ownership of the land will not be changed. *Warren v. Chambers*, 25 Ark. 120; *Murry v. Sermon*, 1 Ruff. & H. 56; *Boorman v. Sunnuchs*, 42 Wis. 233; *Gill v. Lydick*, 59 N. W. Rep. (Neb.) 104. In this case it appears that the disappearance of the water from the lake was sudden and not in a way to change the title to the bed of it.

II. It may be conceded as the rule that riparian owners of lands bordering on rivers or streams not navigable, in the absence of a limitation in the title, take to the center thread of the river or stream. A case of such limitation of title is found in *Murphy v. Copeland*, 58 Iowa, 409, 10 N. W. Rep. 786. In this state no such rule has been applied to lakes or ponds.

"Dry Lake," as it was called, was meandered by the government surveyors, and nothing in the record indicates that in any of the conveyances of lot number 6 there was any purpose to include a part of the bed of the lake. No such claim is made, further than the acts of the parties would be affected by the rule of law as to such riparian owners. In *Dietrich v. Railway Co.*, 42 Wis. 248, it is said: "The rule that the title of the

riparian owner upon a natural lake or pond does not extend beyond the natural shore appears to be very generally—almost universally—recognized." Our views are in accord with the doctrine thus announced. It is not only in harmony with general adjudications on the subject, but it seems, in view of the particular facts of this case, equitable. The judgment of the district court is AFFIRMED.