|133    437|
|133    461|

GEORGE N. BERRY, ET UX., v. JACOB HOOGENDOORN, Appellant.

**Boundaries:** ACCRETIONS. The meander line of a navigable stream is not a boundary but the owner is entitled to the accretions formed in front of his property.

**Same.** The rights of riparian owners along the Des Moines river, whose original title extended to high water mark, are not affected by the repeal of the act of Congress 1846, which declared it to be a navigable river, but their premises are still bounded by high water mark and subject to additions by accretion.

**Same:** DIVISION OF ACCRETIONS. Accretions along a navigable river cannot be divided by an extention of section lines so as to deprive a riparian owner of his original frontage on the newly formed river bank.

**Same.** A new shore line formed by accretions is to be apportioned among owners of land abutting on the old line so that each shall have the same proportion of the new line as he had of the old.

*Appeal from Mahaska District Court.*— HON. W. G. CLEMENTS, Judge.

WEDNESDAY, JULY 11, 1906.

REHEARING DENIED, FRIDAY, FEBRUARY 15, 1907.

ACTION to quiet title to "about two acres of accretions" formed in front of plaintiff's land, where it was originally bounded on the Des Moines river. Defendant, owning an adjoining tract of land, also bounded on the Des Moines river, claims the accretions or a portion thereof as appurtenant to his land. There was a decree establishing

the boundary between the parties and quieting the title of each in a portion of the accretions claimed by the other, and both parties appeal; the appeal of defendant being first perfected.— *Affirmed.*

*W. H. Keating* and *W. R. Nelson,* for appellant.

*McCoy & McCoy* and *J. B. Bolton,* for appellee.

McCLAIN, C. J.— Government lot 3, in section 6, township 74, range 16, in Mahaska county, embraces substantially the W. ½ of the N. W. ¼ of the section, so far as not included within the meander lines of the Des Moines river, as shown on the following plat:

This government lot 3 was subsequently subdivided; but we have no occasion to describe the subdivisions, further than to say that what would constitute the fractional S. W. ¼ of the N. W. ¼ of the section is owned in part by plain-

tiff and in part by defendant; their division line being in-
dicated on the above plat by the dotted straight line between
O' and C, which is parallel to the north and south sectional
line.    It appears that at the time the first conveyances were
made by which this fractional quarter section was divided,
the broken line, C, D, Q, on the plat corresponded with the
high-water mark of the Des Moines river, and that since that
time the river has receded, so as to leave a considerable area
of accretion, and the respective claims of the two parties to
portions of this accretion constitute the subject-matter of this
lawsuit.    It must be said, however, with reference to the
foregoing plat, that it does not correspond in all its details
to any plat introduced in evidence on the trial of the case.
It is, in the main, a reproduction of a portion of the govern-
ment plat of section 26, to which, however, as presented in
the record, are added some details from a rough pencil
sketch to which the witnesses referred in giving their testi-
mony, and which is not given in the record.    It has been diffi-
cult to apply the testimony given with reference to the pencil
sketch to the details found on the plat with which we have
been furnished.    The plat above set out will illustrate, how-
ever, with sufficient accuracy, the points which we find it
necessary to consider.

I.    It will be noticed in the first place that the line,
D, C, on the above plat, does not correspond with the
meander line of the river, or with any other line purporting

1. BOUNDARIES:     to represent the river bank; but it is conceded
accretions.     that in describing plaintiff's premises in the
conveyances under which he claims the north boundary is
designated as "east 12 chains (from the west section line)
to the Des Moines river," and that the succeeding clause of
the description, "thence south 29¼ degrees east, 6 chains
and 6 links," describing the line represented on the plat as
D, C, was intended to correspond with the river bank.    Un-
der this concession it is immaterial whether the line D, C,
corresponds with the meander line or not, for the meander

line of a government survey is not a boundary line. *Kraut v. Crawford,* 18 Iowa, 549; *Musser v. Hershey,* 42 Iowa, 356; *Ladd v. Osborne,* 79 Iowa, 93; *Dashiel v. Harshman,* 113 Iowa, 283. This disposes of the first claim made for the defendant, which is that plaintiff can have no title beyond the boundary as described in his deed; for, if his land is bounded on a navigable stream, he is entitled to the accretion formed in front of his property. *Coulthard v. Stevens,* 84 Iowa, 241; *Jefferies v. East Omaha Land Co.,* 134 U. S. 178 (10 Sup. Ct. 518, 33 L. Ed. 872). There is no question under the evidence but that the river has gradually receded from plaintiff's property until now the high-water line is about 24 rods distant from the boundary line described in the first conveyance in his chain of title, represented on the plat by the line D, C.

II.   But it is further contended for the defendant that the Des Moines river is not a navigable stream and therefore that plaintiff is not entitled to the benefit of the doctrine of

2. SAME.

accretions. Until 1870 the Des Moines river, up at least as far as the Raccoon Forks, was in law a navigable river. By an act of Congress passed in that year the act of 1846 which declared it to be a navigable stream was repealed. We have held, however, that this repeal did not affect the riparian rights along its banks, and that, as the riparian owners had acquired title by the grants under which they claimed to high-water mark, their premises were still bounded by high-water mark and subject to addition by accretion, just as they would have been had the river continued in law to be a navigable stream. *Steele v. Sanchez,* 72 Iowa, 65. And see *Serrin v. Grefe,* 67 Iowa, 196; *Wood v. Chicago R. I. & P. R. Co.,* 60 Iowa, 456,

III.   Another contention for the defendant is that at most plaintiff can only claim so much of the accretion in

3. SAME:
division of
accretions.

front of his property as necessary to make it rectangular in form, and that he will be bounded by the extensions of his north and east lines. In ac-

cordances with this claim, defendant, a short time prior to the institution of this suit, had constructed a fence from C to G, as indicated on the plat, marking, as he insists, the extension of the north and south dividing line between his premises and those of the plaintiff. We know of no authority which will support any such claims. Accretions are not divided up in this way. If plaintiff and his grantors be riparian owners, the plaintiff is entitled to such portion of the accretions as to give to him his corresponding frontage on the new river bank. Under the claim of defendant plaintiff would be entirely cut off from the river. This contention for defendant is so entirely without support in reason or authority that we need not give it any further consideration.

IV. By the decree the plaintiff was given, beyond his boundary lines as specified in his deeds, the triangular piece of land designated on the plat as D, F, C. Plaintiff complains of the decree in this respect, contend-

4. SAME.     ing that he is entitled to a river frontage corresponding proportionally to the frontage of his premises as described in his deeds on the old river bank, whereas by the decree he gets no frontage, but only a triangular piece of accretion running to a point on the present river bank. The general rule seems to be that the new shore line is to be apportioned among the owners of premises abutting on the old shore line, so that each shall have the same proportion of the new line as he had of the old. The cases announcing and illustrating this rule are fully cited in the standard treatises on the subject. See, for instance, Gould, Waters (3d Ed.), section 163; 1 Jones, Real Property, section 483; 2 Tiffany, Real Property, section 454; 1 Am. & Eng. Enc. of Law, 477. The rule is quite fully explained in *Northern Pine Land Co. v. Bigelow,* 84 Wis. 157 (54 N. W. 496, 21 L. R. A. 776), and *Thomas v. Ashland, etc., Logging Ry.,* 122 Wis. 519 (100 N. W. 993). The difficulties in applying the general rule in particular cases need not be discussed here, for this

case gives no occasion for their elaboration. We think it is true that plaintiff would have been entitled in a proper case to a decree giving him some portion of the new shore line. The difficulty is that plaintiff has not shown on the record what proportion of the new shore line he is entitled to, nor where his portion should be located; and we infer that the trial court had no better means of information on the subject than we have, and for that reason was unable to give to plaintiff the full measure of his rights. We understand from the authorities on the subject that it would be necessary to ascertain the length of the new shore line between the points of its departure from the old shore line and the length of the corresponding portion of the old shore line, so that the new line might be apportioned in parts corresponding to the parts of the old shore line belonging to the different owners. If this had been done, then the accretions would be divided up by running straight lines from the points on the old line to the corresponding points on the new. No such basis for dividing the new shore line was furnished in the evidence probably for the very good reason that the expense of making the surveys and apportionment would have exceeded the possible value of one or two acres of sand bar covered with willows and cottonwoods. Without such means of apportionment, we are unable to say how much of the shore line south of the point F on the plat should have been apportioned to plaintiff. The part of the new shore line corresponding to the line from D to C might perhaps extend north of the point F. Reference is made in the evidence and in argument to a point marked H on the plat, but we are unable to ascertain how this point is located or definitely where it is located. If it is intended to indicate the point where the east line of the fractional S. W. ¼ of the N. W. ¼ of the section would strike the present river bank, it is of no significance in making the apportionment; nor is it of any significance if it is the point where a line running due east from C on the plat would strike the present river bank. As be-

tween plaintiff and defendant, the point on the present river bank to which a line from C should be run so as to give to plaintiff and to defendant each his proper share of the present river bank is dependent on the apportionment which should be made as between all the owners on the old river bank who are affected by the accretions. We are satisfied that the court gave plaintiff all that he showed himself entitled to under the evidence, and that is all we can do. Plaintiff asks in his petition to have his title quieted to " about two acres of accretions at the northeast corner of " his tract of land where it fronts on the river, and by the decree as we understand it he gets one and eight-tenths acres of accretion. We think he has no substantial cause for complaint.

V.   Each party bases some claim on adverse possession, but we are unable to ascertain from the evidence that there has been any adverse possession for ten years by either party, by himself or through his grantors, of any definite portion of the accretions. So far as plaintiff is concerned we are satisfied that the triangular piece of land to which his title is quieted covers all the accretions over which he has ever exercised any definite acts of ownership. The evidence in its indefiniteness is somewhat like that set out in *Stern v. Fountain,* 112 Iowa, 96. No result different from that reached by the trial court would be justified on the ground of adverse possession.

The decree of the trial court is therefore *affirmed* on both appeals.