STATE OF IOWA, Appellant, v. CARRIE LIVINGSTON, ET AL., Appellees.

**Waters:** TITLE TO BED OF NON-NAVIGABLE STREAM. A government section was surveyed as fractional and divided into lots and included also a meandered tract designated as a lake, but which in fact was a slough that in times of high water was overflowed but ordinarily contained little water. Gradually it was filled with sediment deposited by the overflow so that it was tillable except in time of high water. The section was granted to the state as swamp and overflowed land, but the patent described simply the lots, omitting the slough. Subsequently the state conveyed the entire section to the county. *Held*, that the county thus acquired the title to the entire

section and that the state had no such interest by reason of its sovereignty that it could prevent the owners of the several lots from exercising a proprietary interest over the bed of the slough.

Same:  MEANDER LINES:  RIPARIAN RIGHTS:  ACCRETIONS.  While the meandering of a stream by the government survey is conclusive as to the navigability of the stream so far as the rights of riparian owners are concerned, still the meander line is not in a strict and conclusive sense a boundary line; as the riparian owner has rights in the accretions beyond that line.

Same.  The owner of land adjoining a navigable stream has a right of accretion, while in case of a non-navigable stream the adjoining proprietor owns to the center of the stream and is entitled to all that may be added to the land by accretion or otherwise within that limit.

Same:  ACTION BY STATE TO QUIET TITLE:  ESTOPPEL.  Where the waters of a slough or bayou receded and it ceased to be a running stream, and as a result of overflow water soil was gradually deposited therein until it became suitable for cultivation, and was so used by the riparian owners for at least ten years, their rights therein were of such character as to justify a denial of relief in an action by the state to quiet title to the slough, on the ground of laches and estoppel.

Same:  LIMITATIONS:  LACHES:  ESTOPPEL.  The statute of limitations cannot be urged against the state, but where it seeks to establish rights by an action to quiet title, relief may be denied on the ground of laches and estoppel.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

TUESDAY, JANUARY 27, 1914.

ACTION to quiet title in real estate.  From a decree in favor of defendants, the plaintiff appeals.—*Affirmed.*

*George Cosson*, Attorney General, *C. A. Robbins*, Assistant Attorney General, and *Frank J. Capell*, County Attorney, for the State.

*George H. Mayne* and *Fremont Benjamin,* for appellees Eyberg and Turk, administrator.

*John M. Calvin,* for appellee Foote.

*Tinley & Mitchell,* for appellees Livingston, Jennings, and Beno.

WITHROW, J.—The defendants are owners of real estate in Pottawattamie county, holding under conveyances from that county, which describe the several tracts as lots 1, 2, 3, and 4 in section 22, township 76, range 44. The title of the county upon which was based the conveyances to defendants and their grantors was derived from the state and its title came from the general government. In 1857 the United States government caused to be made a survey of the lands in section 22, and in other sections adjacent and connecting. At the time of the survey there was a body of water covering parts of sections 21, 22, 27, and 28, which was known and designated as Boyer Lake, and meander lines were run, and such line was fixed in the measurements made as the boundaries of the tracts on the water side of the lands. Under the survey thus made lot 1 contained 61.60 acres, lot 2, 24.40 acres, lot 3, 63.90 acres, and lot 4, 71.30 acres. Lots 5, 6, and 7 are not material to this inquiry, save as to the included acreage of the government grant, which will be hereafter noticed. Some years after this survey there was a change in the course of Boyer river, which up to that time had flowed through a channel over section 22, and with the backwaters of the Missouri river covered with water that part of the territory designated as Boyer Lake; and as a result of this change, there was a recession of the waters so that the land now in dispute was no longer covered with water excepting in times of high water, when the backwaters of the Missouri river, and the flow from the north and east, would for a time again cover it, but soon passing away. These overflows had

the effect at each time of adding to the soil by deposits of soil and other substances, and in time and for forty years or more what was in 1857 designated as Boyer Lake had been occupied, and used for agricultural and other useful purposes, subject to the overflows which we have mentioned. The defendants and their grantors have by occupancy claimed the lands thus freed from the burden of the water under the right of accretion and reliction, so far as such within section 22 have formed an extension or addition to their several lots. This action is brought by the state for the purpose of establishing and quieting its title to the real estate in controversy, claiming that it acquired title to the remainder of the lands not included in the description of the lots by virtue of its sovereignty and its admission into the Union, the same being at that time a lake known as Boyer Lake. It asks that the several defendants be enjoined from exercising control over the bed of such meandered lake, and from by-ditches or obstructions interfering with the natural flow of water to it. The defendants claim that the land in question never was a lake, but an outlet of Boyer river or an arm of the Missouri river. They also claim that the state of Iowa never had any interest in the land in controversy, for if it was a lake, having been meandered, and gradually filled, and such filling accreted to the adjoining banks, it would have no right to it; and, if it was the mouth of Boyer river or an arm of the Missouri river, the riparian owners would have the right of accretion. The defendants also pleaded laches and estoppel against the state, based upon occupancy of and improvements made upon the land, under claim of title, continuing for more than ten years, and also that they have for many years paid taxes upon said lands. The trial court found the equities of the case to be with the defendants, and dismissed plaintiff's bill. From the decree entered upon such finding the state of Iowa appeals.

I. Without in detail reciting the evidence introduced upon the trial, we find in it full warrant for the conclusion

of the trial court as to the ultimate facts which we adopt, and which was as follows:

That, of the time of the original survey of section 22 by the United States, it was surveyed as a fractional section, consisting of lots 1, 2, 3, 4, 5, 6, and 7 and a meandered tract which the engineers designated as 'Boyer Lake.' That the so-called Boyer Lake, which was thus meandered by the surveyors, was not in fact a lake, but was a bayou or slough or arm of the Missouri river, which in time of high water was overflowed, but in time of ordinary stages of water contained little or no water. That it was not a part of the channel of the Missouri river at that time, and that the east bank of the Missouri river at that time was west of the center line of section 21. That the so-called Boyer Lake was not a navigable body of water, but was a slough, or bayou, into which the waters of the Missouri river backed in time of high stages, and into which the waters of the Boyer river and Pigeon creek emptied in time of freshets. That said low slough or bayou gradually was filled with sediment deposited by such backwaters and such overflows, and accreted to the lands bordering thereon. That the survey in question was made at a time of high water, as is shown by the notes of the engineers at the time, and at a time when this bayou was filled with backwater.

These conclusions render it unnecessary to consider some of the questions which have been argued.

II.  In 1860 the general government issued to the state of Iowa its patent for certain lands designated as swamp or overflow lands, included in which was the whole of section 22.

1. WATERS: title to bed of non-navigable stream.
Under this grant there was selected and approved by the Secretary of the Interior, 352.90 acres in section 22, being that part of the section covered by the particular description of the several lots with their meander boundaries, and not in terms including that part designated by the survey of 1857 as Boyer Lake. Following this patent, and in the same year, the state of Iowa issued its patent to Pottawattamie county, conveying

to it all of section 22; and, based upon such prior conveyances, the defendants and their grantors became the owners in fee of lots 1, 2, 3, and 4. In 1901 the then owners of lots 1 and 2 in section 22 obtained in the superior court of Council Bluffs a decree against Pottawattamie county, the grantee of the state, and also against the owners of all property bounded on the old bed of Boyer Lake, so-called, quieting and confirming in them the title to that part of the old bed lying east of said lots 1 and 2 and west of Pigeon creek. The state was not a party to these proceedings. It is not claimed by the state that it now holds title to any part of the real estate by virtue of the patent to it issued by the United States, for whatever right and title it then received was fully transferred by its conveyance to Pottawattamie county. Its right, if any, then, must depend upon the claim made in argument that, the stream or body of water having been meandered, such is conclusive that the stream was navigable in so far as navigability affects the boundary line of riparian lands, or if it was in fact a lake, navigable or nonnavigable, or a part of the Missouri river, or a temporary body of water not proper to have been meandered, the boundary line of the riparian owners stops at high-water mark, or the meandered line, and that the state in the exercise of its sovereign powers has the right to protect for the people the land not thus included.

III.  The patent from the United States to the state of Iowa was a grant to the state of lands in section 22, designated as swamp or overflow lands; and, while the grant in terms covered the entire section, the number of acres named corresponded with that covered by the areas of the several lots which had been surveyed. The subsequent patent issued by the state to Pottawattamie county covered all of section 22, with other lands, and contained no statement by way of limitation of the quantity conveyed. In *State v. Jones*, 143 Iowa, 408, this court has recognized the right of the state to maintain action to prevent persons without title from exercising a proprietary interest over a lake or lake bed, the theory

of the decision being that the title to the bed of a nonnavigable meandered lake does not pass to the owners of platted lands bordering upon it, but, in the absence of conveyance by patent, remains in the general government, reserved in trust for all the people of the state in which it lies. Upon this rule plaintiff rests its right to sue. The reason for the rule, which relates only to lakes, is given as being to preserve to the people the free right of boating, fishing, and the like, and not for any use or benefit which might be had of the lake bed when free from water. But when the land has emerged, and that which was designated as a lake has passed away and the soil is used for agriculture, another inquiry arises. In such case we are then carried back to the original patent to determine its effect upon the area then covered by water. In *Foss v. Johnstone,* 158 Cal. 119 (110 Pac. 294), it is held that "a government patent to land, bordering on a nonnavigable pond, which expressly declares that it grants lots mentioned, and that they contain a stated number of acres, which is the same number of acres mentioned in the plat, does not show an intent to only grant the stated number of acres, and to make the meander line the boundary, since it is the practice of the government in disposing of the public lands to measure the price to be paid by the quantity of upland without making any charge for the land under water." The same rule is stated in *Hardin v. Jordan,* 140 U. S. 384 (11 Sup. Ct. 808, 838, 35 L. Ed. 428). In many states, including California, it has been held that the title of the abutting owners extends to the center of the lake, and the cited cases were based upon that rule; but in this state when applied to lakes the rule is different, and ownership rights are limited by the meander line, but not so as to nonnavigable streams. *Wright v. Council Bluffs,* 130 Iowa, 274; *State v. Thompson,* 134 Iowa, 25; *State v. Jones, supra.*

But this body of water was not a lake; it received its supply not from subterranean springs, or other sources which distinguish a lake from a bayou or arm of a large stream,

but was a bed which was covered by overflow, and in many respects, because of what may be termed its upper inlet, was for the time part of a running stream, and properly came with the government designation of overflow land, and therefore presented a condition analogous to that considered in the *Foss* and *Hardin* cases, the ownership in each instance reaching to the middle. Recognizing this as its character, we think the rule in the *Foss* case, *supra,* although relating to a pond in which the right of ownership of the bed differed from the rule in Iowa is the true guide as to the effect to place upon the conveyance made by the United States in its patent. In the subsequent patent made by the state of Iowa to Pottawattamie county the conveyance covered the whole of section 22 without reservation. The whole of that section passed to the state under the federal patent, and its later conveyance passed the full title to Pottawattamie county. It is not a case where by reason of want of conveyance, there is an implied reservation by the United States in trust for the people of the state, but one in which there was no reserved title but a conveyance of all. We are of opinion that the state of Iowa has no such interest in the lands as entitled it to maintain this action. We might well rest our decision at this point; but in the interest of settled titles we deem it proper to go farther.

IV. The fact that a body of water has been meandered, in surveys made under the authority of the United States government, and under instructions from its proper depart-

2. SAME: meander lines: riparian rights: accretions. ment to thus meander navigable streams, has been often held to be conclusive as to its navigability, so far as the rights of riparian owners are concerned; but this relates, not to the question of navigability in fact, but to the meander lines which are established as boundaries, and which control as to sales made in accordance with such boundaries. *Park Commissioners v. Taylor,* 133 Iowa, 458, and, as applied to meandered lakes, *State v. Jones, supra.* But the meander line thus run does

not, in a strict and conclusive sense, constitute a boundary line, for beyond it the riparian owner has such rights of ownership in the lands as result from accretion. *Berry v. Hoogendoorn*, 133 Iowa, 437.

Resting upon the conclusion that the body of water designated as Boyer Lake never was a lake but was caused by the flow of the Boyer river and smaller upper streams, and by waters from the Missouri river of which it was an arm, we exclude from necessary consideration the question of rights under the law arising from the emergence of and title to lake beds, and turn to the question of the right to accretions and reliction on meandered nonnavigable streams, for such we hold the present record shows Boyer Lake to have been. That the adjoining proprietor has such rights in the case of navigable streams is a rule so well settled as to be beyond controversy. *Berry v. Hoogendoorn, supra; Stern v. Fountain*, 112 Iowa, 96.

3. SAME.

If the stream be nonnavigable, it is the rule that adjoining proprietors hold to its thread or center, and of course become entitled to all that may be added to the land by accretions, or otherwise within that limit. *Noyes v. Collins*, 92 Iowa, 568; *Moffett v. Brewer*, 1 G. Greene, 348; 5 Cyc. 897.

It clearly appears from the evidence that by the change in the course of Boyer river the land in question no longer served as the channel for a running stream, if it ever had been continuously so, and that there was a recession of the waters, leaving the land in part uncovered, and by later freshets, overflows, and backwaters, and their resulting deposits upon the land there were formed accretions to the lands of the defendants. At each overflow there was noticeable deposit of soil, until in the course of time this became of considerable depth, gradually lifting its surface until it became suitable for agriculture, and as such the evidence shows has been used by defendants and their grantors for many years more than the period fixed as barring a right of action as between individ-

4. SAME: action by state to quit title: estoppel.

uals. These accretions were of such character as to come quite within the rule adopted by this court in *Coulthard v. Stevens*, 84 Iowa, 245. ''The terms 'alluvion,' on the one hand, and 'gradual' and 'imperceptible' accretion on the other, are used by writers to contradistinguish a sudden disruption of a piece of ground from the land of one man to another, which may be followed and identified, from that increment which slowly or rapidly results from floods, but which is utterly beyond the power of identification.''

It is claimed that the change in the course of Boyer river was sudden, and that there was not such a gradual recession of the waters covering this land as to bring the case within the rules which recognize the right to land resulting from reliction, and also that by ditches and otherwise the defendants and their grantors have aided the discharge of the water, which was therefore not from natural causes. We do not find in the evidence that which would justify the finding that the efforts towards drainage materially affected the original cause which resulted in opening the land to use, or the rights which had arisen because of such, but rather were after the cause had affected the main result, and the drainage means employed were not improper as an aid to the better use of the land.

While the original change in the course of Boyer river was sudden, in the sense that its flowage was by obstructions and other causes diverted to a different course, thereby relieving the land of the burden occasioned by the flow over it in times of high water, the evidence shows that for years following that change, by the backwater of the Missouri river and the freshet water of other small streams which flowed into the old Boyer river channel, and in times of overflows, there were formed the soil deposits which we have noted, and this was gradual, originally commencing at the north, and moving to the south, continuing over a period of many years, and resulting in such building of the soil as to render it fit for agriculture, and so used, as testified by one witness, for

over forty years, subject to the annual overflows which with the passage of time and soil deposits affected less of it each year. Other witnesses fix the time of occupancy and use at less than forty years, but the lowest is much in excess of ten years. These facts at least afforded to the occupants of the lands a basis for their claim of right, and under them they for many years asserted ownership of this land without protest or hindrance.

V.  Whatever may at one time have been the superior rights of others, if there were such, under this state of facts it is quite clear that, if this action were between individuals, the plaintiff would fail as against the plea of adverse possession, as there can be no doubt that for a period longer than ten years the defendants and their grantors have been in possession of this real estate, claiming it as rights resulting from accretion, as well as under their conveyances—as to a part of the land title being quieted by them as against Pottawattamie county—and have used it for the purposes of husbandry, and made improvements by way of fences. While it is the general rule that the statute of limitations cannot be urged against the sovereign, the right to rely upon an estoppel by acquiescence and the plea of laches is recognized by many courts, including our own, and is based upon principles of equity. *State v. Des Moines,* 96 Iowa, 534; *State of Iowa v. Carr,* 191 Fed. 257 (112 C. C. A. 477); *State of Indiana v. Milk* (C. C.) 11 Fed. 389; *United States v. McElroy* (C. C.) 25 Fed. 804; *State of Michigan v. Jackson,* 69 Fed. 116 (16 C. C. A. 345).

5. SAME: limitations: laches: estoppel.

We think that after permitting these many years of uninterrupted enjoyment of the property in question, under claim of right, the state, had it the right to sue, should not now be permitted to disturb it; but, having invoked the power of a court of equity to establish its rights, it should be bound by the rules of conscience which guide its chosen forum. We hold that it may not now assert title to or the right of control

for the whole people of this real estate, and that the decree of the trial court should be *Affirmed*.

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.