CATHERINE KERR, Appellee, v. CHARLES LUTHER FEE et al.,
Appellants.

BOUNDARIES: Description—Waters and Watercourses—"Bank"
1  of Stream—Deeds. A deed of land "lying and being on the right
bank of White Breast Stream (or in the bend thereof)" con-
veys to the center of the stream, the grantor so owning, and.the
deed being silent as to any intention to reserve the strip lying
between the top of the bank and center of the stream, or any
part thereof.

VENDOR AND PURCHASER: Quantity of Land—Deficiency—Evi-
2  dence. Evidence reviewed, and held to show that the compu-
tation made on a survey was so imperfect as not to establish
the claim that there was a deficiency in the acreage called for
by the deed and bond.

*Appeal from Marion District Court.*—W. H. FAHEY, Judge.

MONDAY, FEBRUARY 19, 1917.

REHEARING DENIED SATURDAY, MAY 12, 1917.

ACTION on bond resulted in judgment as prayed. The
defendant appeals.—*Reversed.*

*W. H. Lyon* and *L. D. Teter,* for appellants.

*W. G. Vander Ploeg,* for appellee.

LADD, J.—The plaintiff purchased a
tract of 55 acres of land of defendant, pay-
ing therefor $160 per acre. There being
doubt as to the number of acres, defendant,
with Wright as surety, executed a bond,
which, after reciting the purchase of the land, describing it,
reciting the price paid, that defendant had warranted that
there were not less than 55 acres, and that some.question
had arisen as to the number of acres conveyed, reads:

"Now therefore, in consideration of the above payment,

we, Charles Luther Fee, as principal, and O. L. Wright, as surety, are held and firmly bound unto the said Catherine Kerr in the penal sum of $1,000, for the payment of which, well and truly to be made, we do bind ourselves, executors and assigns. The condition of the foregoing obligation is such that if, upon a survey, caused to be made by Catherine Kerr, of the real estate above described, it shall be found that said tract of land conveyed contains less than 55 acres, and if the said Charles Luther Fee shall then pay to the said Catherine Kerr $160 per acre for any shortage, then this obligation to be void; otherwise to remain in full force. It is provided, however, that, if the said Charles Luther Fee shall not be satisfied with the correctness of the survey, caused to be made by Catherine Kerr, he may then, within 30 days after being advised of the result of such survey, cause said tract of land to be surveyed by another survey-or, and if the result of the survey made by the two survey-ors shall not agree, then said surveyors shall select a third surveyor to survey the same and figure the acreage, and the said parties agree to abide by the decision of such third surveyor. If, however, the said Charles Luther Fee shall not cause the said tract of land to be surveyed by another surveyor within 30 days from the time the result of the first survey has been communicated to him, it is then agreed that the result of said survey shall stand and be considered as correct and binding between the parties."

Other provisions have no bearing on this controversy. Plaintiff caused a survey to be made, and on May 31, 1915, notified the defendants that, as a result of the survey, there was a shortage of 2.77 acres, and compensation at $160 per acre was claimed. No survey was made in behalf of defend-ants. The object of this action is to recover that amount on the bond. The plat below indicates the location of the land, and the survey as made at the instance of plaintiff:

The defendant pleaded: (1) That the stream, being the White Breast Creek, formed the boundary between this land and that beyond; (2) that the language of the deed described the land as extending to the water's edge when at ordinary height; (3) that the survey was not of the land described in the deed, but only part of it; (4) that there were in fact 55 acres in the land conveyed; (5) that the two strips indicated on the plat had been acquired by the grantor by adverse possession, and that, by mutual agreement, these were to be included as part of the land sold. The deed described the land conveyed as:

"The north 25 acres of the southwest quarter of the northeast quarter, except commence at the northwest quarter thereof, thence south 3 rods, thence east 54 rods to

Knoxville road; thence north 3 rods, thence west 54 rods to beginning; also except commence at the northeast corner of said 40-acre tract, thence south 14 rods, thence west 5 rods, thence north 14 rods, thence east 5 rods to beginning; and the east half of the southeast quarter of the northwest quarter, and all that part of the northeast quarter of the northwest quarter lying and being on the right bank of White Breast Creek (or in the bend thereof), all in Section 34, Township 76, Range 20, west 5th P. M., containing 55 acres more or less."

The descriptions in the chain of title had been the same since 1889. The land across the creek immediately to the north had been owned and conveyed to and by different grantors, as follows:

"That part of the northwest quarter of the northwest quarter north of the main channel of White Breast Creek."

As the strips of land shown on the plat were expressly excepted from the conveyance, and have never been transferred to plaintiff, and defendant was not shown to have acquired title thereto by conveyance or by adverse posssession, this portion of the defense required no consideration. But two questions remain: (1) The meaning of that portion of the description reading "all that part of the northeast quarter of the northwest quarter lying and being on the right bank of White Breast Creek (or in the bend thereof) ;" and (2) whether, even though this mean all land to the water's edge, and therefore there were substantially 55 acres in the tract, this will relieve defendant of liability, in view of the conditions contained in the bond. Other errors are assigned, but not included in the brief points.

I. The land immediately beyond that in controversy was described as north of the main channel of the stream and, under such description, in the absence of language indicating otherwise, extended to the center of the creek, such center constituting the boundary. *City of Denver v.*

*Pearce,* 13 Colo. 383 (6 L. R. A. 541); *Nichols v. Suncook Mfg. Co.,* 34 N. H. 345; *Wiggenhorn v. Kountz,* 23 Neb. 690 (8 Am. St. 150).

"It has been said that the reason why a deed bounding only on a stream of water carries title to the center is that the stream thus defined is supposed to be a line without width in the center of the stream, and not a space having width and extent as appearing upon the face of the earth. There is a reason, however, which goes deeper than merely presuming that the stream is a line. The presumption is that no land is left without private ownership, and that the boundaries of the owners on opposite sides of the stream are in contact with each other; and the only place where they can touch without injustice to either owner is at the center of the stream. The 'center of the stream,' referred to in the rule which extends the boundary of land bordering on a nonnavigable river from the bank of it to the center of the stream, means the center of the whole stream, and not the center of that portion of a stream parted by the presence of an island therein which runs between the island and the land on the bank of the river. The rule applies to land of any tenure, whether freehold, copyhold, or leasehold. To retain title to the bed of the stream in the grantor, the intention to do so must be clearly expressed. This may be done in various ways, and the question whether or not it has been done will depend upon the language of the conveyance and the particular circumstances of the case." 3 Farnham on Waters, p. 2510, Section 852.

The land in controversy is described as all of the quarter section "lying and being on the right bank of White Breast Creek." Is the boundary of the land, so lying on the bank, at the top of the bank, the water"s edge, or the center of the stream? The deed does not express or suggest any intention of reserving or excepting from the operation of the conveyance the narrow strip between the top of the bank

and the water's edge or the center of the stream, or between the last two. Nor does it even describe the bank of the stream as a boundary, but merely points out all the land lying on the right bank thereof. The evidence disclosed that the land rises gently from the creek, save at two places, where it was more abrupt. If all on the bank were included, it must necessarily extend at least to the water's edge. Of course, the owner may reserve the soil under the water, but the presumption is that the purchaser's title extends as far as the grantor owned, for that a narrow strip between the edge and center of the stream would probably be valueless to the grantor. Gould on Waters (3d Ed.), Section 195.

So, too, for like reason, the description in a deed of a boundary as the bank of a stream, or as beginning at a defined point on the bank and running along a nonnavigable stream, is presumed to run along the center of the stream, if the grantor's title so extends. *Kent v. Taylor,* 64 N. H. 489 (13 Atl. 419) ; Gould on Waters, Section 197 *et seq.*

The language of the description may be such as to limit the boundary to a line on the bank or to the margin of the stream, but nothing of the kind is to be implied from the description in question. 3 Farnham on Waters, Section 857. In *Murphy v. Copeland,* 51 Iowa 515 (58 Iowa 409), the language employed in the conveyance was such that the boundary was found to be the edge of the stream at low water. Here, the boundary is not indicated save by the location of the land, and we are of opinion that the true boundary is that of the adjoining land, i. e., the center of the stream.

II. The condition of the bond is "that if, upon a survey, caused to be made by Catherine Kerr of the real estate above described, it shall be found that said tract of land conveyed contains less than 55 acres, and if the

2. VENDOR AND PURCHASER : quantity of land : deficiency : evidence.

said Charles Luther Fee shall then pay to said Catherine
Kerr $160 per acre for any shortage, then this obligation
to be void; otherwise to remain in full force." To breach
the bond, then, it must have been found that the land con-
veyed was less than 55 acres, and we do not think this was
conclusively proven. The surveyor testified that he meas-
ured the land "to the bank of the creek," and ran lines at
right angles with the creek "to the creek bank," and made
notes of the distances. These lines varied from 5 feet to
59 feet in length. The areas included between the top of
the bank and the water's edge, he did not compute, but
estimated the total area to be at least 2½ acres. Lyons
testified that the surveyor informed him that he "followed
the direction of the plaintiff's attorney, and had surveyed
to the commencement of the slope leading down to the wa-
ter," and that "the land excluded would amount to approx-
imately 3 acres." This was in accordance with the sur-
veyor's testimony, and Fee swore that, both before and
after the execution of the deed and bond, he had said to the
sons of plaintiff, who had negotiated the purchase, that the
boundary was the center of the stream; that, "as far as he
knew, it was in the creek somewhere." The underbrush
had been removed down to the water's edge, and the trees
allowed to remain, and the branches of those on either side
of the creek at places hung over and intertwined. The sur-
veyor did not pretend to have exercised his own judgment,
or to have established the boundary according to the rules
of surveying, but ran lines along the top of the bank, as
directed by plaintiff's attorney. In doing so, however, he
ran lines from the water's edge at right angles with the
course of the stream to the line on the bank, and, having
the distances between the intersections of these lines and
the direction of the bank line, it was a mere matter of com-
putation to ascertain the area between the bank line and
the water's edge. The surveyor did not make the compu-

tation of this strip, but did of the land extending to the top of the bank, though not as that of the real estate conveyed. To survey land means to ascertain the corners, boundaries and divisions, with distances and directions, and not necessarily to compute areas included within defined boundaries. Knowing these, any competent mathematician can ascertain the areas. What is meant by, "it shall be found that said tract of land conveyed contains less than 55 acres," is that this shall appear from a correct computation according to the survey as made. A computation of the area to the creek would have shown it to have substantially that conveyed, as the surveyor testified that there were 52.65 acres, if measured to the top of the bank, and in the strip, at least 2½ acres. Not the survey, but the computation, was erroneous, and plaintiff, in stating the result, arbitrarily as. .med that the boundary was on the top of the bank, instead of at or in the stream. This was not warranted from the survey. It is clear from the survey as made that 55 acres were conveyed, and that the court erred merely in directing the jury to return a verdict for plaintiff instead of defendant.—*Reversed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.